926 A.2d 957

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William Theodore WALLS, Appellee.**

Supreme Court of Pennsylvania.

Argued May 8, 2006.

Decided July 17, 2007.

Michael Harve Sholley, Esq., Peter Carr, Esq., Michael T. Hudock, Esq., Middleburg, for Commonwealth of Pennsylvania.

John Henry Reed, Esq., Robert H. Steinberg, Esq., Middleburg, for William Walls.

David R. Crowley, Esq., Bellefonte, for amicus curiae Public Defenders Association of PA and PA Association of Criminal Defense Lawyers.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Chief Justice CAPPY.

In this appeal we are asked to consider whether the Superior Court erred in making certain legal determinations leading it to vacate the judgment of sentence imposed by the sentencing court with respect to Appellee William Theodore Walls. For the reasons that follow, we find that the Superior Court

did err. In addressing the nature of these errors, we clarify the proper standard of appellate review of a sentencing court's imposition of sentence. Ultimately, we remand this matter to the Superior Court for a re-examination of the judgment of sentence in light of our decision today.

The facts upon which the lower tribunals based their decisions follow.[1] Appellant sexually molested his seven-year-old granddaughter during overnight visits by the victim at her grandparents' home. Specifically, Walls' granddaughter would sleep on the floor of her grandparents' bedroom on a bed made of piled blankets. On certain occasions when the victim's grandmother awoke and left the bedroom, Walls would leave his bed and lie down next to his granddaughter and sexually assault her. Typically after lying next to his granddaughter, Walls would pull down his pajamas and underpants and rub her vagina and anus. He would then place his erect penis between her legs and/or up against her vagina and anus and then often proceed to penetrate his granddaughter either vaginally or anally until reaching climax. Walls may have also improperly touched his granddaughter in his woodshop and in his automobile while his wife was in a store. After a report of abuse was made to the police, an investigation ensued during which Walls purportedly admitted that he had sexually assaulted his granddaughter several times. Walls was charged with a variety of counts relating to sexual abuse of a minor.

Walls pled guilty to one count of rape of a victim less than thirteen years old, 18 Pa.C.S. § 3121(6); one count of involuntary deviate sexual intercourse (IDSI) with a victim less than

---

1. As noted by the Superior Court, the conviction in the present appeal was a result of an entry of a guilty plea. The pre-sentence investigation report was not included in the certified record, although a copy of the report appears in the reproduced record attached to the Commonwealth's brief. Walls does not now contest the veracity of the report, and did not do so when offered the opportunity to make corrections to the report at sentencing. As the parties do not challenge the validity of the report, we believe it acceptable to rely upon the information contained in the report to serve as a basis for the factual history in this appeal. *Commonwealth v. Killen*, 545 Pa. 127, 680 A.2d 851, 852 n. 5 (1996).

thirteen years old, 18 Pa.C.S. § 3123(a)(6); and one count of incest. 18 Pa.C.S. § 4302. The plea was "open" to the count of rape and IDSI, but called for a standard range sentence on the charge of incest.

After a pre-sentence investigation, Walls was sentenced on March 24, 2003 to an aggregate term of twenty-one to fifty years of imprisonment. The rape and IDSI counts carried mandatory minimum sentences of five years of imprisonment and standard range sentences of sixty to sixty-six months of imprisonment and an aggravated range sentence of sixty-six to seventy-eight months of imprisonment. Walls received the statutory maximum for each offense, which was ten to twenty years of imprisonment. Thus, the sentencing court imposed a sentence outside of the sentencing guidelines. With respect to the incest count, Walls received a sentence of one to ten years of imprisonment, a sentence within the standard range. All sentences were ordered to run consecutively. Walls filed a motion to modify sentence which was denied on April 22, 2003. Walls then appealed to the Superior Court.

In its opinion pursuant to Pa.R.A.P.1925(a), the sentencing court explained the reasons for Walls' sentence: (1) Walls was in a position of trust and responsibility in caring for the victim; (2) the tender and young age of the victim, who was seven years old·at the time of the rape and assaults; (3) that the victim was Walls' granddaughter; and (4) Walls perceived his acts to be "accidents" as opposed to deliberate conduct. The sentencing court found that the factors which led to the maximum sentences were legal, that the reasons for the sentence were stated on the record, and that this statement of reasons on the record reflected consideration of the nature of the sentence.

On appeal a three-member panel of the Superior Court vacated Walls' judgment of sentence. *Commonwealth v. Walls*, 846 A.2d 152 (Pa.Super.2004). The Superior Court first engaged in a historical review of sentencing discretion, noting that the prevailing approach to sentencing until the late 1970's was largely unfettered discretion of the sentencing court in imposing sentences. At that time, sentencing guide-

lines were formulated which, according to the Superior Court, restricted sentencing discretion and increased appellate review of sentences. In reviewing the considerations in sentencing, the Superior Court offered, *inter alia,* that "[t]he sentence should be based on the minimum confinement consistent with the gravity of the offense, the need for public protection, and the defendant's need for rehabilitation." *Walls,* 846 A.2d at 157–58 (citation omitted).

Finding that the guidelines created a "norm" for comparison to achieve the goal of greater consistency and rationality in sentencing, the Superior Court offered that the norm "strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates [sic] from the norm and must be regarded as not within the guidelines [sic] contemplation." *Id.* at 158. Thus, the sentencing court must, if it imposes a sentence that deviates significantly from the guideline recommendation, demonstrate that the case is "compellingly different from the 'typical' case of the same offense. . . ." *Id.* In the Superior Court's view, the sentencing court "is not free to reject the Sentencing Commission's assessment of an appropriate sentence and simply interpose its own sense of just punishment." *Id.* at 160.

In applying these articulations of the legal standards to the facts, the Superior Court believed that in imposing Walls' sentence, the sentencing court concentrated too greatly on the principle of revenge and protection of the public. The Superior Court proceeded to reject the factors which led the sentencing court to deviate from the guidelines. Specifically, the Superior Court found that the fact that Walls held a position of trust and was responsible for caring for the victim, are factors not uncommon in cases of this type. With respect to the tender age of the victim, the Superior Court noted that the crime itself made a distinction with respect to certain classes of victims, such as minors and the elderly, and thus, the sentencing guidelines reflect the Crimes Code's provision of greater punishment of certain crimes committed against cer-

tain victims. The Superior Court found that neither this factor, nor any other factor cited by the sentencing court, justified the imposition of the maximum sentence permitted by law.

We granted allocatur to clarify the proper standard of review an appellate court should employ when considering a challenge to a sentence that falls outside of the sentencing guidelines and to determine whether the Superior Court erred in making certain legal determinations which led it to vacate Walls' sentence.

The standard of review typically refers to the level of deference to be accorded a lower tribunal's decision. Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J. Appellate Prac. & Process 47 (2000). Our Court has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. *Commonwealth v. Smith*, 543 Pa. 566, 673 A.2d 893, 895 (1996)("Imposition of a sentence is vested in the discretion of the sentencing court and will not be disturbed absent a manifest abuse of discretion."). As stated in *Smith*, an abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.*[2] In more expansive terms, our Court recently offered: "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1046 (2003).

**2.** As supported by both our case law mandating review of the record, Smith, 673 A.2d at 895, and the Sentencing Code requiring an appellate court to review the "record" in making the reasonableness determination described below, 42 Pa.C.S. § 9781(d), our scope of review on appeal is plenary, in other words, we may review the entire record.

■ The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Ward,* 524 Pa. 48, 568 A.2d 1242, 1243 (1990); *see also Commonwealth v. Jones,* 418 Pa.Super. 93, 613 A.2d 587, 591 (1992)(en banc)(offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime."). Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines,[3] the power of sentencing is a function to be performed by the sentencing court. *Ward,* 568 A.2d at 1243. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision. *See also United States v. Salinas,* 365 F.3d 582, 588 (7th Cir.2004).

As can be seen from the above, the abuse of discretion standard includes review of whether the judgment exercised was unreasonable. As more fully described below, the Sentencing Code sets forth a requirement of appellate review for whether a sentence outside of the guidelines is "unreasonable." 42 Pa.C.S. § 9781(c). Thus, the statutory unreasonableness inquiry is a component of the jurisprudential standard of review for an abuse of discretion. We now turn to a review of that statutory standard.

**3.** The sentencing guidelines were promulgated by the Pennsylvania Commission on Sentencing to be considered by and to aid courts in imposing sentences. *See generally Commonwealth v. Sessoms,* 516 Pa. 365, 532 A.2d 775 (1987). The guidelines were designed to bring greater rationality and consistency to sentences and to eliminate unwarranted disparity in sentencing. *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617, 620 n. 2 (2002)(plurality).

▇▇▇ When analyzing a statute, we are guided by the Statutory Construction Act, 1 Pa.C.S. § 1501 et seq. The purpose of statutory construction is to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a). The language employed by the General Assembly is the best indication of its intent. When the words of a statute are clear and free from all ambiguity, the letter is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Therefore, we consider other aspects of the statute and the statutory process only when the words are not explicit. 1 Pa.C.S. § 1921(c). If this is the case, we may discern the General Assembly's intent by considering, *inter alia*, the various factors enumerated in 1 Pa.C.S. § 1921(c). *Office of Administration v. Pennsylvania Labor Relations Board*, 916 A.2d 541, 547–48 (2007). With these guidelines in mind, we turn to an analysis of appellate review of a sentence as set forth in the Sentencing Code.

▇▇▇ Through the Sentencing Code, the General Assembly has enacted a process by which defendants are to be sentenced. As a threshold matter, a sentencing court may select one or more options with regard to determining the appropriate sentence to be imposed upon a defendant. These options include probation, guilt without further penalty, partial confinement, and total confinement. 42 Pa.C.S. § 9721(a). In making this selection, the Sentencing Code offers general standards with respect to the imposition of sentence which require the sentencing court to impose a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).[4] Thus, sentencing is individual-

---

4.  **(b) General standards.**

    In selecting from the alternatives set forth for subsection (a) the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing

ized; yet, the statute is clear that the court must also "consider" the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. *Id.* If the court imposes a sentence outside of the sentencing guidelines, it must provide a written statement setting forth the reasons for the deviation and the failure to do so is grounds for resentencing.

The Sentencing Code also sets forth express standards regarding appellate review of a defendant's sentence. As is apparent from the statutory provision setting forth the parameters of appellate review, the central focus of substantive appellate review with respect to a sentence outside of the guidelines is whether the sentence is "unreasonable":

**(c) Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

\* \* \*

(3) *the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.*

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c)(emphasis supplied).

In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:

**(d) Review of record.**—In reviewing the record the appellate court shall have regard for:

and taking effect pursuant to section 2155 (relating to publication of guidelines for sentencing). In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

42   Pa.C.S. § 9721(b).

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

■ Thus, under the Sentencing Code an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is "unreasonable." 42 Pa.C.S. § 9781(c), (d).

Yet, what makes a sentence "unreasonable" is not defined in the statute. Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." The Random House Dictionary of the English Language, 2084 (2nd ed.1987); *see* 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition. *Cf. United States v. Crosby*, 397 F.3d 103, 115 (2nd Cir.2005)(explaining concept or reasonableness in context of sentencing matters).

Thus, given its nature, we decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781(d)'s

four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

With clarification of the proper standard of review, which includes the standard of unreasonableness under the Sentencing Code, we turn to the specific arguments raised by the parties concerning the Superior Court's vacatur of Walls' sentence.

The Commonwealth first challenges the Superior Court's suggestion that a sentencing court is "bound" by the sentencing guidelines. Walls counters that the Superior Court's determination in this matter should not be interpreted as holding that a sentencing court is "bound" by "the assessment of just punishment contained in the guidelines." Walls' Brief at 5. Rather, Walls suggests the Superior Court only held that to deviate significantly from the sentencing guidelines, "there must be a demonstration that the case under consideration is compellingly different from the typical same offense, or that the defendant's character or criminal history takes him from the norm." Walls' Brief at 5.

In this appeal, the parties do not question the advisory, nonbinding nature of the guidelines. Indeed, our current case law as well as scholarship supports such an assumption. *Sessoms*, 532 A.2d at 781 ("[T]he court has no 'duty' to impose a sentence considered appropriate by the Commission. The guidelines must only be 'considered' and, to

ensure that such consideration is more than mere fluff, the court must explain its reasons for departure from them."); *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617, 621 (2002)(plurality)("The Sentencing Guidelines are not mandatory, however, so trial courts retain broad discretion in sentencing matters, and therefore, may sentence defendants outside the Guidelines."); *see generally* Steven L. Chanenson, *The Next Era of Sentencing Reform*, 54 Emory Law Journal 377 (Winter 2005). As our Court stated in *Sessoms*, the guidelines are but "one factor among the many enumerated in the Sentencing Code as a whole...." *Sessoms*, 532 A.2d at 781. Consultation of the guidelines will assist in avoiding excessive sentences and further the goal of the guidelines, viz., increased uniformity, certainty, and fairness in sentencing. Guidelines serve the laudatory role of aiding and enhancing the judicial exercise of judgment regarding case-specific sentencing. Guidelines may help frame the exercise of judgment by the court in imposing a sentence. Therefore, based upon the above, we reaffirm that the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence. So the Superior Court erred to the extent that it understood that the sentencing court was bound by the sentencing guidelines. *See also Commonwealth v. Yuhasz*, 592 Pa. 120, 923 A.2d 1111 (2007).

■■■ Second, the Commonwealth disputes the Superior Court's implication that a sentencing court must sentence a defendant to the "minimum possible confinement." While again, it is not clear that this was the intent of the Superior Court to suggest that minimum possible confinement is required, to the extent that the Superior Court's decision can be read to include such a requirement, it too is rejected. As noted by the Commonwealth, the suggestion of a parsimony requirement with respect to sentencing is refuted by the General Assembly's excising of the language requiring a mini-

mum sentence from the Sentencing Code. Prior to its 1978 amendment, the Sentencing Code at 18 Pa.C.S. § 1321(b), now found at 42 Pa.C.S. § 9721(b), provided that offenders receive the "minimum amount of confinement that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." In 1978, however, the Code was amended by deleting the "minimum amount of" language to now only require that confinement be consistent with concern for public protection, the gravity of offense and the rehabilitative needs of the defendant. Thus, under the current Sentencing Code there is no requirement that a sentencing court's imposition of sentence must be the minimum possible confinement and any suggestion by the Superior Court to the contrary is hereby rejected.

Third, we turn to a review of the Superior Court's analysis regarding two primary aspects of the sentencing court's determination to sentence Walls outside of the guidelines. First, the Superior Court questioned whether Walls' sentence constituted individualized sentencing and whether the sentencing court had an agenda against sex offenders that involved imposing the maximum sentences permitted by law regardless of the individual circumstances of the case.[5] *Walls*, 846 A.2d

5. In support of its view, the Superior Court offered the sentencing court's statements made prior to sentencing:

I wish that I could say that there was a treatment that would help you, that would help a pedophile. A pedophile is someone who sexually assaults children, who preys on children. I have not read anything that indicates that there is any successful, long term, successful treatment. I wish I could say I was wrong, but I haven't seen anything that says that there is a realistic expectation that you can be successfully treated.

Not long after I went on the bench, I had a case that was similar to this, only in that case it was the father sexually assaulting his daughter. And I imposed a sentence that made sure that that young woman would have the chance of reaching adulthood, becoming 18, without ever having to deal with her father again. That was a shortsighted-sentence on my part. That didn't do what it should have done.

You have done this to your victim; you have done this to your family; you have done this to you. And if I did not impose the sentences that I imposed, I would not be fulfilling one of my responsibilities, which is to protect members of our community from you, and I want your victim to know, I want your granddaughter to know, that it is

at 159. Even if not an agenda, according to the Superior Court, the sentencing court focused to an extreme on retribution and protecting the public—noting that the court was not free to reject the guidelines and impose its sense of just punishment. *Id.* at 160.

Second, the Superior Court rejected the contention that the tender years of the granddaughter and the position of trust and responsibility that Walls held with respect to his granddaughter justified Walls' sentence, reasoning that factors such as the crime being committed by a caretaker are not "uncommon" in cases of this type, in essence, creating a norm, and that "the guidelines should be considered to have taken into account" such conduct. *Id.* at 160–61. Additionally, while the age of the victim could be treated as an aggravating circumstance, as the elements of the offense went to the age of thirteen, the Superior Court found that this factor did not justify the imposition of the maximum sentence allowed by law. *Id.* at 161.

The Commonwealth refutes these bases for vacating the sentencing court's sentence. First, the Commonwealth offers that the sentencing court pointed to a number of individualized factors that it relied upon in sentencing Walls: the victim's age; that Walls was in a position of trust and responsibility; the victim was Walls' granddaughter; that Walls analogized his assaults to "accidents;" and the consideration of Walls' prospects for rehabilitation as dim. Moreover, the Commonwealth noted the fact that the victim was entrusted to Walls' care was not subsumed within the sentencing guidelines and was therefore a legitimate reason to impose an above-guideline sentence. Likewise, the fact that the victim was only seven years old at the time of the sexual abuse was not an element of rape or IDSI with a victim less than thirteen years old and could justify an above-guideline sentence which might be more heinous than the rape of an older child.

Walls counters these arguments largely by echoing the Superior Court's reasoning and also offering that the factors

extremely unlikely that she will ever run across you on the street. The chances are somewhere between slim and none.

relied upon by the sentencing court were in whole or in part elements of the offenses for which Walls was sentenced. Furthermore, Walls asserts that the sentencing judge gave no consideration to mitigating circumstances.

While we appreciate the Superior Court's scholarly review of sentencing discretion, we find that the Superior Court's understanding of the import of the guidelines and of the nature of appellate review of sentencing led it to impermissibly characterize the sentencing court's decision and to reweigh the reasons offered by the sentencing court.

First, Pennsylvania's sentencing system, as evidenced by the Sentencing Code and our case law, is based upon individualized sentencing. *Commonwealth v. Green,* 494 Pa. 406, 431 A.2d 918, 920 (1981). We find that while the sentencing court unfortunately cast doubt upon the individualized nature of Walls' sentence by making certain general comments about those who sexually victimize young children, when viewed as a whole, the sentencing court made a sentencing decision that was individualized with respect to Walls. As noted by the Commonwealth, the sentencing court considered a number of factors which led it to sentence outside of the guidelines and these factors were specific to Walls. Therefore, we conclude that the sentencing court did not render a non-individualized sentence in this matter and reject the Superior Court's assertions to the contrary.

Furthermore, our review of the four factors set forth in Section 9781(d) lead us to the conclusion that in this appeal, the Superior Court usurped the sentencing court's discretion. Specifically, we believe that the sentencing court properly considered the nature and circumstances of the offense as set forth in greater detail above, recognizing the background that led to Walls' sexually assaulting his granddaughter, the nature of the assaults, and the circumstances in which they occurred. The sentencing court also took into account the history and characteristics of Walls, specifically noting that Walls considered his actions to be "accidents." [6] Additionally, there is no

6. The sentencing court also rejected Walls' challenge that the court mischaracterized Walls' version of events as "accidents." The sentenc-

question that the sentencing court observed the defendant and considered Walls' presentence report which included mitigating factors.[7] Also, the sentencing court based its sentence on certain findings. These findings led the sentencing court to depart from the guidelines. Specifically, the sentencing court pointed to the victim's age, that Walls was in a position of trust and responsibility, that the victim was Walls' granddaughter, and that Walls analogized his assaults to "accidents."

Contrary to the Superior Court, we find that the sentencing court was permitted to rely on these factors to justify Walls' sentence. As noted by the Commonwealth and the Superior Court, the precise age of the victim, i.e., the fact that the victim was only seven-years-old at the time of the sexual abuse, was not an element of rape or IDSI of a victim less than thirteen years old and could justify an above-guideline sentence. While the Superior Court found that this factor could not justify the sentence in this case, in light of the deferential standard of review, we disagree. Additionally, we agree with the Commonwealth that Walls has offered no legitimate basis to presume that these factors, the victim being entrusted to Walls' care and was his granddaughter, are subsumed within the sentencing guidelines. Thus, we conclude that the findings upon which Walls' sentence was based were legally permissible. As to the sentencing guidelines, they set forth a standard range sentence of sixty to sixty-six months of imprisonment and an aggravated range sentence of

ing court offered that this characterization of accidentally sexually assaulting his granddaughter was brought to Walls' attention. The sentencing court asked if this was not accurate or if Walls disagreed with the characterization, and neither Walls nor his counsel sought to correct the sentencing court's understanding of Walls' statements. Therefore, the sentencing court did not believe that its characterization of Walls' version of events was inaccurate and for the reasons offered by the sentencing court, we agree that the sentencing court's characterization was proper and a permissible factor to consider in sentencing.

7. In *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12, 18 (1988), our Court found that "[w]here pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."

sixty-six to seventy-eight months of imprisonment. Walls' sentence exceeded those guidelines. While the guidelines are an important factor in sentencing, they are but only one factor when determining individualized sentences. They do not create a presumption and do not predominate. Here, the sentencing court considered the guidelines, but departed therefrom for reasons that were not foreclosed by the law.

■ Finally, we find that the sentencing court took into account the general standards for sentencing. 42 Pa.C.S. § 9721(b). The sentencing court clearly considered the protection of the public as well as the gravity of the offense as it relates to the impact on the life of the victim and the community. Furthermore, it is apparent that the sentencing court factored into its decision the rehabilitative needs or prospects of rehabilitation for Walls. Therefore, the sentencing court properly considered the requirements of Section 9721(b).

Based upon the above, we find that the Superior Court exceeded its standard of review and erred in making certain legal determinations which led it to supplant the sentencing court's discretion and to vacate the judgment of sentence imposed by the sentencing court. Consistent with our jurisdictional limitations, 42 Pa.C.S. § 9781(f), we vacate the order of the Superior Court and remand the matter to the Superior Court for a re-examination of the judgment of sentence in light of our decision today. *Commonwealth v. Smith*, 543 Pa. 566, 673 A.2d 893, 895 (1996)(finding that Section 9781(f) precludes our Court from reviewing discretionary aspects of sentencing but does not preclude review of the application of legal principles).

Justice BALDWIN did not participate in the consideration or decision of this case.

Former Justice NEWMAN did not participate in the decision of this case.

Justice CASTILLE, SAYLOR and EAKIN join the opinion.

Justice BAER files a concurring opinion.

Justice BAER, concurring.

As I conclude that the Superior Court erred, I join the Majority. However, I write separately to express my concern regarding the Majority's decision to "decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines." Majority Op. at 568, 926 A.2d at 964. I fear that the decision will be interpreted to provide near limitless discretion for trial courts in the sentencing context. The Majority's decision may indeed negate the intended effect of the guidelines, which, as the Majority acknowledges, "were designed to bring greater rationality and consistency to sentences and to eliminate unwarranted disparity in sentencing." Majority Op. at 565 n. 3, 926 A.2d at 961–62 n. 3. While I fully agree that the sentencing guidelines are merely guidelines, rather than requirements, the General Assembly's enactments nonetheless require trial courts to provide reasons in support of any deviation from the guidelines, 42 Pa.C.S. § 9721(b), and require appellate courts to vacate sentences deemed unreasonable, 42 Pa.C.S. § 9781. These provisions require an appellate court to determine whether the reasons given by a trial court provide a reasonable rationale for deviating from the guidelines. An appellate court should vacate a sentence where the trial court provides no basis, or an unreasonable basis, for the deviation.

Accordingly, I join in the decision of the Majority to remand the matter to the Superior Court for reexamination of the judgment of sentence.