## Commonwealth v. Clotter

C.P. of Lackawanna County, No. 13 CR 1884

*Shane Scanlon*, for Commonwealth.
*Donna DeVita*, for defendant.

MINORA, *J.*, Feb. 10, 2015—

## Factual Background

On or about May 5, 2013, members of the Scranton Police Department were dispatched by the Lackawanna County Communications Center to the 700 block of Vine Street in the City of Scranton, Lackawanna County, Pennsylvania. The nature of the call was that a male had been shot in this area. Upon their arrival, the police found a black male, later determined to be Rashan Crowder, lying in the roadway with a gunshot wound to the chest.

Medical personnel were summoned and arrived at the scene. These personnel unsuccessfully initiated life saving measures. They subsequently transferred Mr. Crowder to Geisinger Community Medical Center. The victim, Rashan Crowder, was later pronounced dead at Geisinger.

On May 6, 2013, an autopsy was performed by a forensic pathologist on the decedent. The results of that autopsy as noted by Lackawanna County Coroner Tim Rowland indicated that Crowder, the decedent, had sustained two gunshot wounds, one to the chest and one to his right thigh. The cause of death was the gunshot wound to his chest. The manner of death was listed as a homicide. As a result of the autopsy findings, the police began a criminal investigation into this incident.

The police investigation determined that Crowder was a student at Lackawanna College and lived near the site of his death in the Tobin Hall dormitory. Numerous witnesses, not all in concurrence, led police to conclude what occurred on or about May 5, 2013.

Decedent Crowder was apparently accompanied on that fateful night by a friend named Shaquille Isbell. Isbell was an eye witness to the relevant events. Isbell told police that he was a friend of decedent Crowder and attended Lackawanna College with him.

Earlier that evening Isbell and Crowder attended a house party in the 400 block of Monroe Avenue in Scranton about two blocks from the area of the shooting. There may have been some words exchanged at the party

but Isbell and Crowder left that party and walked to other locations in their hill section neighborhood and to a mini mart and returned to their dormitory. After the passage of time Isbell and Crowder left their dormitory and went back to the mini mart.

Upon leaving the mini mart to return once again to their dormitory, they happened upon a group of males and females on the corner of Monroe Avenue and Vine Street just up the street from the original party earlier that evening. The two groups began to give each other "attitude" and trash talking and insults back and forth. The unfortunate result of this exchange was that a male member of the group produced a handgun firing it at Rashan Crowder striking him in the right thigh. After the shooting, a University of Scranton security car happened to arrive at the scene thus causing the two groups to separate and walk down the 800 block of Vine Street from Monroe Avenue towards Madison Avenue, the location of the Tobin Hall dormitory. During this one block plus walk, words, trash talk and insults resumed.

The arguments continue beyond Madison Avenue on Vine Street to an area in the 700 block of Vine Street near Moir Court. At that point, a second male from the group begins to goad the male into shooting the decedent for a second time. Repeatedly, the second male encourages and urges the first male to fire again. When the second shot occurs, it hits Decedent Crowder in the chest fatally injuring him. At that point, the group of males and females

all flee the area.

Subsequent investigation and security video review revealed that the shooter was Ryan Harding, the man holding the gun. Our defendant, Marlon Clotter was also identified as the male coaxing, encouraging and goading Ryan Harding to fire shots at decedent Crowder.

Marlon Clotter was born on September 10, 1991, one of eight children. His mother abused drugs and alcohol, thus providing a traumatic childhood which began where he was born in Queens, New York. He moved at various times to Atlanta, Georgia and Scranton to stay with relatives or in foster homes. From 2008 to 2012, Clotter was incarcerated in SCI Pine Grove.

Clotter has a GED he earned while he was incarcerated. He also has an extensive history of drugs and alcohol abuse. His extensive history also extends to the legal system. As a juvenile, Clotter was arrested fourteen times and convicted of numerous crimes involving physical assault. Despite Clotter being placed in numerous juvenile facilities, he continued to repeat his mistakes and past pattern of behaviors.

Often while under supervision for one crime, Clotter would be arrested for another. At age seventeen, he was convicted as an adult. Tellingly, while under state parole supervision for that offense, Clotter committed the instant offense.

Procedural Background

On August 30, 2013, Clotter's preliminary hearing was held before Magisterial District Judge Sean McGraw. On September 30, 2013 by order of President Judge Thomas J. Munley, the undersigned was appointed to preside over this case. On November 7, 2013, discovery deadlines and motion deadlines were set as well as a tentative trial date for August of 2014. On November 6, 2013, the District Attorney for Lackawanna County issued a four count bill of information against Clotter. The defendant was formally arraigned the same day.

On January 15, 2014, defense counsel filed an extensive omnibus motion on behalf of defendant Clotter. The Commonwealth responded to the omnibus on February 4, 2014. On July 3, 2014, the court decided Clotter's voluminous omnibus motion.

On July 11, 2014, the Commonwealth filed an amended bill of information containing five counts against Clotter. The additional or fifth count was criminal conspiracy to commit aggravated assault, 18 Pa. C.S.A. §903(a)(1): grade felony; $25,000.00; 20 years. On that same day, Clotter entered a guilty plea to one count of criminal conspiracy to commit aggravated assault. All other charges were dropped. Commonwealth agreed to recommend a minimum sentence of not more than seven years. (*See* Written Guilty Plea Colloquy).

On November 3, 2014, a sentencing memorandum was filed on behalf of Clotter which was thoroughly reviewed by the court prior to sentencing. On November 5, 2014,

a joint sentencing hearing was held for both defendant Clotter and the shooter, Ryan Harding. After consultation with the court reporter, it was determined that this joint proceeding began on November 5, 2014 at 10:01 a.m. and concluded at 1:30 p.m. It is most unusual for a sentencing proceeding to take three and one half hours even if a joint one. In this case, it was done to allow extensive victim/family/friend testimony and also to allow substantial defendant allocution. The court covers its reasons for the sentencing scheme for defendant Clotter starting at page 116 to page 121, N.T. 11/5/14-Proceedings of Sentencing. Earlier relevant dialogue begins with defendant Clotter at page 111.

Subsequent to sentencing, on November 10, 2014, counsel for defendant Clotter filed a reconsideration of sentence. That motion was denied on November 12, 2014 by order of this court. Defendant Clotter's Notice of Appeal to the Pennsylvania Superior Court was filed on December 5, 2014 and their concise statement of matters complained of on appeal was filed on January 28, 2015, thus giving rise to this opinion.

Appellate arguments of defendant Clotter

A. Whether the court committed an abuse of discretion by imposing a sentence in excess of the aggravated range where there were no circumstances warranting a sentence above the aggravated range?

B. Whether the sentence imposed was inappropriately harsh and excessive and an abuse of discretion?

C. Whether the court failed to take into consideration that the defendant is a product of particular circumstances and conditions of environment that were not fully and completely explored in the pre-sentencing report?

D. Whether the court committed an abuse of discretion when it failed to address the defendant's request for boot camp eligibility?

## Legal Standards

A. Whether the court committed an abuse of discretion by imposing a sentence in excess of the aggravated range where there were no circumstances warranting a sentence above the aggravated range?

B. Whether the sentence imposed was inappropriately harsh and excessive and an abuse of discretion?

Both arguments A and B are addressed to the court allegedly abusing its discretion in sentencing. Argument A alleges an abuse of discretion for imposition of a sentence in excess of the aggravated range, "where there are no circumstances to warrant such a deviation." Argument B alleges the sentence imposed was inappropriately harsh and excessive and an abuse of discretion for that reason. Since both allege an abuse of discretion violation and for similar factual reasons we shall address both arguments A and B concurrently.

As background, this sentence being challenged is as a result of a guilty plea by defendant Clotter. It is therefore axiomatic that only three theories of appeal are given

to defendant. First, that the plea was not knowing or voluntary. Second, that the court lacked jurisdiction, and third, that the sentence imposed was illegal.

Since the arguments regarding the first and second theories are not being raised, we will allow the third reason, attacking the legality of the court's sentence, to guide our reasoning.

In *Com. v. Lee*, 876 A.2d 408,411 (Pa. Super. 2005), the Superior Court noted that, "...Appellant's right to appeal the discretionary aspects of his sentence is not absolute." Further, "It is well-settled that a 'claim that the sentence imposed by the trial court was manifestly excessive is a challenge to the discretionary aspects of the sentence'." *Id.* at 411.

"The Lee court goes on to cite *Com. v. Bishop*, 831 A.2d 656, 660 (Pa. Super 2003) for the proposition that two requirements must be met prior to reaching the merits of a challenge to the discretionary aspects of a sentence. First, the appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence, (citations omitted). Second, he must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code...42 PA. CONS.STAT.ANN §9781(b). In order to establish the existence of a substantial question, the appellant must show, 'actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental

norms underlying the sentencing process'."

*Com. v. Bishop*, 831 A.2d at 660; *Com. v. Lee*, 876 A.2d at 411.

Assuming those prerequisites are met, the appeals court must then engage in a four pronged analysis. *Com. v. Evans*, 901 A.2d 528,533 (Pa. Super. 2006).

> "[W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa. R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa. R.Crim.P. 1410 [now rule 7201; (3) whether appellant's brief has a fatal defect, PA. R.A.P. 2119(a); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 PA. C.S.A. §9781(b)."

Since the analysis is within the purview of the appeals court, we will presume these matters are in order and we will address defendant's issues on their merits.

Beginning at page 116 of the transcript of Sentencing from November 5, 2014, the nature of the plea bargain and guilty plea are discussed. Thereafter, the court's concern with Clotter's extensive juvenile record is discussed along with his adult incarceration at SCI Pine Grove. Thereafter, recent violations of Clotter at Lackawanna County Prison were explored. That pattern of repetitive involvements with the criminal justice system along with his relative youth

upon completion of any sentence were also discussed. The obvious context to these discussions is formulating a sentence that is consistent with the protection of the public and their safety. Especially, when this defendant Clotter was active in retrieving the weapon used (N.T. 11/5/14, p. 111) and actively encouraging the shooter to use it. Clotter is the guy who brings a gun to a fist fight.

In addition, the gravity of the offense is in need of analysis when one considers that the aggravated assault with serious bodily injury pled to here was actually a homicide. We remain guided by the offense gravity score but the nature of the offense needs to be recognized and the opportunities to avoid it.

The encounter leading to the first shot to Crowder's right thigh occurred on Monroe Avenue and Vine Street. The defendant Clotter and his group could have retreated down Monroe Avenue to diffuse the situation and the victim also had the means and opportunity to retreat throughout.

Other avenues of retreat existed in the alley west of Monroe Avenue between Monroe Avenue and Madison Avenue. A third opportunity to retreat also existed on Madison Avenue itself. Finally, they fled in Moir Court after the second and fatal shot. Four opportunities to avoid the confrontation were squandered by the defendant. These opportunities to retreat were being encouraged by some in defendant's group. Even if defendant initially failed to consider retreat he was encouraged to walk away

by Corey Williams and instead he stayed and encouraged escalating the use of the gun to increase the violence and danger rather than decrease it. Such poor judgment must be considered as this court believes it persists within the defendant to the date of sentencing.

The profound impact of taking the life of the victim by Ryan Harding as equipped and encouraged by this defendant cannot be understated. The extensive testimony by the victim's family and friends was both moving and remarkable. This crime had an extensive impact on the college community at Lackawanna College in Scranton as well as the victim's home town of Harrisburg, Pennsylvania.

The sentence as fashioned also tries to address defendant's potential for rehabilitation. It is a seven year minimum. If defendant behaves in prison and takes advantage of prison's educational opportunities he could be out long before this seventeen year maximum. In being on parole, it is hoped that the structure of future parole supervision out of jail would afford Clotter the discipline needed to thrive on the outside. Tellingly, this crime occurred while on state parole from SCI Pine Grove. It is hoped that a future parole experience will benefit defendant from this experience and be more successful. The long tail, though less than the statutory maximum, hopefully insures defendant remains motivated to correct his past behavior and lifestyle.

With these rationales in mind, we must now address the

concept of abuse of discretion. The court stands accused of abusing its' sentencing discretion. The cases require that the sentencing court's advantageous perspective of viewing the defendant not be disturbed absent a, "manifest abuse of discretion." *Com. v. Smith*, 543 Pa. 566, 673 A.2d 893, 895 (1996).

As stated in *Smith*, an abuse of discretion is more than a mere error in judgment, The record must show the sentencing court's judgment was manifestly unreasonable or the result of partiality, prejudice, bias or ill-will or such lack of support as to be clearly erroneous. *Grady v. Frito-Lay, Inc.*, 576 Pa. 546,839 A.2d 1038,1046 (2003).

The rationale behind the broad discretion given to the trial court and the appellate court's deferential standard of review is, as noted, the sentencing court is in the best position to determine the proper penalty for the particular offense based upon and evaluation of the individual and the circumstances before it. *Com. v. Jones*, 418 Pa. Super. 93, 613 A.2d 587,591 (1992) en banc. The sentencing court is recognized in the case law to be in a superior position to "...view the defendant's character, displays of remorse, defiance or indifference and the overall effect of the nature of the crime. *Id.* at 591.

The sentencing code at 42 Pa. C.S.A. §9721(b) illustrates the legal sentencing options available to the court. It also lists the factors the court should consider such as protecting public safety, the gravity of the offense, the impact of the life of the victim and the community and

the rehabilitative needs of the defendant. 42 Pa. C.S.A. 9721(b). Thus, sentencing is individualized.

Furthermore, there are sentencing guidelines that the court must also consider. The guidelines are just that, guidelines for the court to consider. They are not mandatory but a deviation from these guidelines must be accompanied by a written explanation justifying and explaining the deviation. The core focus of such a review of a guideline deviation explanation is whether the individual sentence remains reasonable. At 42 Pa. C.S.A. §9781(c)3, it is explained that the appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if the appellate court finds, "(c)3 the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable."

In making this reasonableness inquiry, the statute at 42 Pa. C.S.A. §9781(d) directs the appeals court to review, "(1) The nature and circumstances of the offense and the characteristics of the defendant." We have shown the defendant's bringing a gun to a fist fight, retrieving the gun, encouraging the gun's use and ignoring opportunities to retreat that were pointed out to him. We also showed defendant's extensive record and recent prison misconduct. "(2) The opportunity of the sentencing court to observe the defendant including pre-sentence investigation." 42 Pa. C.S.A. §9781(d)(2). We have already noted the lengthy sentencing hearing on November 5, 2014 wherein a lengthy colloquy with defendant Clotter was conducted.

We noted we read the pre-sentence report as well as all last minute filings and letters. "(3) The findings upon which the sentence was based." 42 Pa. C.S.A. §9781(d)(3) these are noted in the notes of transcript as well as earlier in this opinion. Finally, "(4) The guidelines promulgated by the commission" are noted on the first page of the pre-sentence report. 42 Pa. C.S.A. §9781(d)(4). Both 42 Pa. C.S.A. §9781(c) and (d) prohibit a sentence outside of the guidelines which is unreasonable.

As noted in the case of *Com. v. Walls*, 592 Pa. 557, 926 A.2d 957, 963 (2007) unreasonable is a term not defined by statute but in *Walls*, our Supreme Court notes that "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment."

Given the scheme of individual sentencing without the statute defining "unreasonable" the *Walls* court concludes that the concept of unreasonableness is to be, "...a circumstance-dependent concept that is flexible in understanding and lacking precise definition." *Id.* at 963.

The *Walls* court determined by applying the guidelines under 42 Pa. C.S.A. §9781(c)(3) and (d) and 42 Pa. C.S.A. §9721, we can be guided upon a reasonableness inquiry without fashioning any concrete rules to govern such an inquiry.

As the *Walls* court notes, the guidelines are advisory and non-binding. The sentencing court has no duty to impose a sentence considered appropriate by the commission. The guidelines need only to be considered by the sentencing

court and to insure such consideration is substantive, the sentencing court must explain their departure from such guidelines. The guidelines are but one factor among many to be considered as per the sentencing code. *Id.* at 964, 569.

Since these guidelines are not mandatory, the sentencing court retains broad discretion in sentencing matters and therefore, they are empowered to sentence outside the guidelines although with an accompanying explanation as to why the guidelines are not reasonable in a given case. *Wall* generally 569, 570, 964. The *Wall* court concludes that in essence, the sentencing guidelines are advisory guideposts that are valuable as providing an essential starting point. The guidelines are to be respected and considered however, they recommend rather than require a particular sentence.

Since we hold that defendant Clotter was given an individualized sentence based upon the relevant sentencing code factors as well as with the respect and consideration of the guideline recommendations we conclude that upon review of the record, the post sentence motion and the Pa. R.A.P. 1925 issues, the court has fashioned a reasonable individualized sentence for this defendant not in any way abusing its discretion to so do.

C. Whether the court failed to take into consideration that the defendant is a product of particular circumstances and conditions of environment that were not fully and completely explored in the pre-sentencing report?

The essence of this argument is factual not legal. The court had the benefit of all the written materials in the pre-sentence report as well as last minute filings and letters.

The report referenced that Clotter had a difficult up-bringing with a substance dependent mother and an absent father. The dysfunctional family situation created a need for his placement with family, friends and foster care. Unfortunately this added to the emotional instability of defendant's childhood with a geographic instability as well. Probably as a result of these unfortunate circumstances, the defendant began to act out and become involved with out juvenile justice system. That involvement was frequent and repetitive. In virtually each instance, defendant Clotter chose to reach out to undesirable peer groups for the absent family support rather than to the counselors that were dedicated to trying to help Clotter lead a more productive life as a juvenile. Clotter admits at sentencing this led him to become a member of the Crips gang at least for a time.

His juvenile involvement led to a serious involvement with the adult criminal justice system. He was convicted and sentenced to SCI Pine Grove wherein he served adult time and was paroled on state parole. Clotter was under state parole supervision when the this present case occurred.

Clotter has a documented penchant for repeating his mistakes and making the wrong decisions throughout his young life. He alleges he is making progress because now

he will accept responsibility for his criminal actions rather than trying to make excuses for them. Despite extensive discussions with the court, we remain unconvinced that he sees the need to stop the criminal actions which compel his need to accept responsibility. In other words, he allegedly accepts responsibility now for the impact of his actions without recognizing the need to cease those criminal actions which are the cause of his acceptance of responsibility in the first instance.

We believe, given the benefit of a thorough pre-sentence report, an extensive juvenile record along with an adult record and with recent prison misconducts that we have a grasp of defendants particular circumstances. The extensive colloquy between this court and defendant Clotter at the November 5, 2014 sentencing hearing only confirms our impression that we have a grasp of defendant's particular circumstances.

Defendant is articulate and likeable but his record of poor judgment in terms of with whom he chooses to associate, juvenile adjudications and his adult conviction record prior to this mandate our decision.

We wish him well and hope he takes advantage of prison education, religion and job opportunities as he will emerge with a long life remaining to live. Despite all this, we believe we have considered all of the defendant's relevant circumstances, conditions and environment, and judged Clotter on his actions as well as his words. Therefore, this argument is rejected.

D. Whether the Court committed an abuse of discretion when it failed to address the Defendant's request for boot camp eligibility?

This argument presumes defendant would be eligible for boot camp but the pre-sentence report at page eighteen (18) under the heading, "Boot Camp Eligible: (No) If No, certain crimes and age (40+) are ineligible.

A review of 61 Pa. C.S.A. §3903 under definitions for an "Eligible Inmate" states,

"A person sentenced to a term of confinement under the jurisdiction of the department of corrections who is serving a term of confinement, the minimum of which is not more than two years and the maximum of which is five years or less...

Defendant was sentenced by agreement to a minimum sentence not to exceed seven years. The court honored this plea agreement. Therefore, defendant's potential minimum as agreed renders him ineligible under the Motivational Boot Camp Act, 61 Pa. C.S.A. §3901 et seq.

Assuming that the seven year minimum agreement represented a cap or the maximum minimum that could be imposed by the court then we must look back to the guidelines given defendant's offense gravity score of ten (10) and his prior record score of (4).

Applying these directives to defendant Clotter even if the court were to sentence him in the mitigated range (which would never be realistically appropriate in this

court's view) the minimum would be thirty-six (36) months thus rendering the defendant ineligible since his minimum sentence would exceed two years.

Defendant's argument therefore, sounds only in the realm of the theoretical possibility not as a viable realistic alternative. This is posited because the defendant's eligibility need would require a downward departure from an already unrealistic mitigated range.

Such a needed downward deviation below the mitigated range would not reflect the serious nature and gravity of this offense of conspiracy to commit aggravated assault with serious bodily injury (in this case death).

Such a needed downward departure below the mitigated range would also ignore the defendant's near constant interaction with the criminal justice system since being a juvenile at age thirteen and more as an adult.

Furthermore, defendant was under adult state parole supervision when he committed this offense. Obviously this shows the defendant has not benefited from his previous interactions with the criminal justice system including but not limited to his juvenile counseling and supervision.

As a youth, defendant admitted he was a Crips gang member. In this case, Clotter urged shooting a firearm on a public street by Ryan Harding therefore, showing a total lack of concern for the safety and rights of the public.

Defendant has an extensive history of substance

abuse and a recent as well as past history of disciplinary violations while incarcerated.

Therefore, there is no realistic way he could ever be sentenced in a mitigated range let alone need a downward departure below that in order to be boot camp eligible. Further, the sentence which he was already serving when he committed this crime precludes boot camp eligibility.

At 09 CR 2, on June 1, 2009 this defendant is listed as being sentenced from a minimum of twenty-seven (27) to fifty-four (54) months at SCI Pine Grove. Defendant was sentenced at 09 CR 331 to three (3) to six (6) months at SCI Pine Grove consecutive to 09 CR 2.

This would mean that defendant Clotter was serving a combined sentence for two separate offenses 09 CR 2 and 09 CR 331 of thirty (30) months minimum to sixty (60) months maximum. He was out on state parole supervision at the time he committed the offense herein. The balance of these underlying sentences remaining is unclear however, the original length of 09 CR 2 as imposed would preclude boot camp edibility due to the minimum exceeding two years. *See* 61 Pa. C.S.A. §3903.

Using the prism of individualized sentencing, this defendant could never realistically be boot camp eligible. Accordingly, this factual argument is dismissed as disingenuous given the realities of defendant's present circumstances.