J-A13034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DUWAYNE DIXON, | : | |
| | : | |
| Appellant | : | No. 1052 WDA 2015 |

Appeal from the Judgment of Sentence June 3, 2015
in the Court of Common Pleas of Allegheny County,
Criminal Division, No(s):  CP-02-CR-0016492-2008

BEFORE:  OLSON, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:  **FILED AUGUST 16, 2016**

Duwayne Dixon ("Dixon") appeals the judgment of sentence imposed following his conviction of aggravated assault, conspiracy, criminal attempt (homicide), intimidation of a witness and retaliation against a witness.[1]  We vacate Dixon's judgment of sentence and remand for resentencing.

In 2008, Dixon shot Andre Ripley ("Ripley"), who was scheduled to testify against the leader of Dixon's gang in an unrelated criminal matter. Following the shooting, Ripley was hospitalized for two months due to vision loss.  Ripley thereafter attended a rehabilitation clinic for four months.[2]  In January 2013, a jury convicted Dixon of the above-referenced crimes.  In March 2013, the Honorable Joseph Williams ("Judge Williams") imposed an

---

[1] **See** 18 Pa.C.S.A. §§ 2702(a)(1), 903(a)(1), 901(a), 4952(a)(1) and 4953(a).

[2] There is some indication in the record that Ripley is now blind as a result of Dixon's actions.

aggregate sentence of 28-56 years in prison, followed by 40 years of probation.[3]

Dixon appealed his judgment of sentence. Thereafter, a panel of this Court vacated Dixon's judgment of sentence and remanded for resentencing based on the trial court's failure to merge the sentences for Dixon's convictions of aggravated assault and criminal attempt (homicide), and other sentencing irregularities.[4] *See Commonwealth v. Dixon*, 120 A.3d 379 (Pa. Super. 2015) (unpublished memorandum at 5-9).

On June 3, 2015, upon remand, Judge Williams resentenced Dixon, imposing the following consecutive sentences: aggravated assault (no sentence imposed), conspiracy (no sentence imposed), criminal attempt (homicide) (10 to 20 years in prison), intimidation of a witness (7 to 14 years in prison, followed by six years of probation) and retaliation against a

---

[3] Judge Williams sentenced Dixon as follows: aggravated assault (3 to 6 years in prison, to be followed by 10 years of probation); conspiracy (10 years of consecutive probation); criminal attempt (homicide) (15 to 30 years in prison, to be followed by 20 years of consecutive probation); intimidation of a witness (5 to 10 years of consecutive imprisonment); retaliation against a witness (5 to 10 years of consecutive imprisonment).

[4] The panel also concluded that: (1) the sentences imposed for conspiracy and criminal attempt (homicide) were improper under 18 Pa.C.S.A. § 906 (providing that a defendant may not be convicted of more than one inchoate offense in the commission of the same crime); (2) the sentence imposed for retaliation against a witness, a felony of the third degree, exceeded the maximum sentence for that offense (7 years); and (3) because the jury did not determine whether Ripley suffered serious bodily injury in relation to the criminal attempt (homicide) charge, the sentence imposed exceeded the statutory maximum sentence permitted under 18 Pa.C.S.A. § 1102(c). *See Dixon*, 120 A.3d 379 (unpublished memorandum at 5-9).

witness (three to six years in prison, followed by one year of probation).  As all of Dixon's sentences were to run consecutively, his new aggregate sentence totaled 20 to 40 years in prison, followed by seven years of probation.[5]  Dixon filed a post-sentence Motion and a Motion for recusal, both of which the trial court denied.  Thereafter, Dixon filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal.

On appeal, Dixon raises the following questions for our review:

I.     Was the sentence imposed upon [] Dixon after remand, which was the maximum permissible under the law, unreasonable, manifestly excessive, and an abuse of the sentencing court's discretion for the following reasons:

   a. The court used a racial epithet in reference to [Dixon?]

   b. The court improperly focused upon retribution and refused to consider how [Dixon] had attempted to rehabilitate himself since the initial sentencing six years previously[?]

   c. The court assumed facts not in evidence and erroneous inferences about [Dixon?]

   d. The court focused extensively upon the seriousness of the offense, in effect "double counting" a factor already considered in the Sentencing Guidelines[?]

   e. The court failed to mention the Sentencing Guidelines during sentencing[?]

   f. The court failed to explain on the record, as it must, why it imposed the maximum sentence permissible under the law.  In fact, the court's actions revealed an

---

[5] Dixon was also given time credit for 2,434 days already served on his sentence.

- 3 -

intent to keep [Dixon] under the court's observation for as long as legally possible, regardless of the circumstances[?]

II. Did the lower court err in failing to grant the [M]otion to recuse because of the appearance of impropriety and unfairness that occurred during this case?

Brief for Appellant at 8 (numbering added for sub-issues, sub-issues renumbered for ease of disposition).

In his first issue, Dixon contends that the trial court abused its discretion by calling him "Uncle Tom" during resentencing. *Id*. at 32. Dixon asserts that the trial court's use of a racial epithet when imposing sentence "shows a lack of integrity[,] gives an appearance of impropriety to the court proceedings[, …] is not dignified, nor is it courteous to the defendant." *Id*. at 35.

> The sentencing decision is of paramount importance in our criminal justice system, and must be adjudicated by a fair and unbiased judge. This means, a jurist who assess[es] the case in an impartial manner, free of personal bias or interest in the outcome. Because of the tremendous discretion a judge has when sentencing, a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned. A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings.

*Commonwealth v. Williams*, 69 A.3d 735, 744 (Pa. Super. 2013) (internal quotation marks and citations omitted).

"In order to establish that the sentencing court abused its discretion, an appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of

partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id*. at 741 (internal quotation marks and citations omitted); *see also Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (stating that a trial court's sentence must be vacated if the sentence imposed is the result of the trial judge's "partiality, prejudice, bias or ill-will" towards the defendant).

Here, the record on appeal demonstrates that Judge Williams acted with partiality, prejudice, bias and ill-will towards Dixon personally. At the resentencing hearing, Judge Williams made the following remarks to Dixon:

> Why were you so brain washed and sick to believe you need to kill someone who looks just like you to be a part of a gang. There's no honor in a gang. The only thing your gang did was control this area [in] which they sold poison to their neighbors. It's not [as if] you're a basketball team[,] where you wanted to be home with a basketball. You and your crew wanted to control Wilkinsburg[,] so you can sell poison to your neighbors. You wanted to keep people addicted[,] so you and your goofy friends could make money and act like you're gangsters "we got this on lock-down." There's no honor or dignity. You're an Uncle Tom, I've known you for 300 years. Your name has changed, your face has changed[,] but you're still the same guy that always puts yourself above your community. That's why you're going away for 10 to 20 [years] with seven years [of] probation to follow.

N.T., 6/3/15, at 18-19.

In this case, the cumulative effect of Judge Williams's statements was an improper personal attack on Dixon. A sentencing judge's actions should not reflect mean-spiritedness, and should instead appear as the fountainhead of justice. This Court has vacated judgments of sentence for

- 5 -

similar behavior in prior cases. For example, in **Commonwealth v. Spencer**, 496 A.2d 1156 (Pa. Super. 1995), at sentencing the trial judge called the defendant a "punk" and an "animal," and stated that "[i]f there ever was a case where the death penalty should be imposed, I would gladly pull the switch on you, Chief." **Id**. at 1164. This Court concluded that such statements reflected "the sentencing judge's personal prejudice, bias, and ill-will towards appellant," and vacated the judgment of sentence. **Id**.

Although Dixon's aggregate sentence of 20 to 40 years in prison does not appear to be excessive in light of the circumstances of this case, the trial court's inappropriate remarks leads us to conclude that Dixon's sentence cannot be divorced from the appearance of bias. As in **Spencer**, the trial judge's offensive language attacking Dixon personally demonstrated his partiality, prejudice, bias, and ill-will towards Dixon. Having concluded that Dixon's sentence constituted an abuse of discretion because it was the product of bias, we reluctantly vacate his sentence and remand this matter for resentencing.[6]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judge Stabile joins the memorandum

Judge Olson files a concurring memorandum which Judge Stabile and Judge Musmanno join.

---

[6] Based on our disposition of Dixon's first issue, we need not address Dixon's remaining issues.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2016