J-S37029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM ANTHONY BROWN | : | |
| | : | |
| Appellant | : | No. 3055 EDA 2017 |

Appeal from the Judgment of Sentence Entered July 26, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000611-2016

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED AUGUST 22, 2018**

This appeal stems from what the trial court described as William Brown's "Valentine's Day knife attack" on his wife and her cousin. Trial Court Opinion ("TCO"), filed 12/4/17, at 1. During this attack, Brown continued a "level of savagery for over two hours as he vowed to kill both victims." *Id.* at 4. He now appeals from the judgment of sentence entered on July 26, 2017, after he pled guilty to burglary, aggravated assault, and attempted murder.[1] Brown contends that the trial court erroneously applied the deadly weapon enhancement[2] ("DWE") and abused its discretion in sentencing him to a total of 32 to 70 years' imprisonment. We affirm.

---

\*   Former Justice specially assigned to the Superior Court.

[1]  18 Pa.C.S.A.  §§  901(a),  2502(a),  3502(a)(1)(i),  and  2702(a)(4) respectively.

[2] 204 Pa.Code § 303.10.

The trial court aptly summarized the facts of this case:

On February 10, 2016, [Brown] held a butcher's knife to his wife's throat and threatened her life. On February 12, 2016, his wife was granted a protection from abuse order against him. In response to this Court's order that he have no contact with his wife, on February 14, 2016, [Brown] drove to his wife's home, kicked in the door, and immediately began a sustained, vicious, and unmerciful attack on his wife and on her cousin Scott Barton. [Brown] first stabbed Mr. Barton with the knife he was carrying when he kicked in the door, and slashed [his wife's] hand when she tried to intervene. [Brown] tortured Mr. Barton for more than two hours, during which time [Brown] stabbed Mr. Barton twenty-two times, slashed his throat from ear to ear, cut his face with a box-cutter and broke off at least two knives in his body. [Brown] used four different knives to stab Mr. Barton, and repeatedly told his victims that they were going to die that day. [Brown] only stopped when he allowed his wife to open the door for what he mistakenly believed was his daughter, but was actually the Pennsylvania State Police.

The attack left Mr. Barton barely clinging to life . . . . M[r]s. Brown was left injured and distraught.

TCO at 1, 4.

Barton remained in the hospital from February 14, 2016 until April 9, 2016. Notes of Testimony ("N.T."), Guilty Plea Hearing, 07/26/17, at 24. During that time he had five major surgeries and numerous smaller surgeries by over ten separate surgeons. *Id.* He later was placed in a medically induced coma for nearly a month because a staph infection had developed throughout his body. *Id.* As part of the treatment of the infection, doctors removed nearly all of his internal organs and placed them in an incubator. *Id.*

On July 26, 2017, Brown entered a guilty plea to the above charges pursuant to a plea agreement. A term of the agreement was that Brown's

minimum sentence would be between 23 and 35 years' incarceration. ***Id.*** at 11; ***see also*** Written Guilty Plea Colloquy Form, at 3.

After engaging in a plea colloquy and accepting the plea, the trial court proceeded directly with sentencing. The trial court informed Brown that his burglary conviction was considered a second strike offense,[3] requiring a mandatory minimum sentence of 10 to 20 years' incarceration. N.T., Guilty Plea Hearing, 07/26/17, at 12-13, 15; ***see also*** 42 Pa.C.S.A. § 9714(a)(1). The trial court also explained the maximum sentence for the remaining charges: 20 to 40 years' incarceration for attempted murder, and five to 10 years' incarceration for aggravated assault. N.T., Guilty Plea Hearing, 07/26/17, at 25.

As mitigation, Brown offered into evidence psychological reports from Dr. Elliott Atkins and Dr. Brenda Ivker. ***Id.*** at 27. Dr. Atkins' report concluded that Brown suffered from persistent depressive disorder, generalized anxiety disorder, cocaine abuse, and attention deficit disorder, and had borderline intellectual functioning. ***Id.*** at 28. Dr. Ivker's report referenced Brown's troubled past and the difficulties he encountered in his youth. ***Id.*** at 29. Nevertheless, both doctors concluded that Brown "was quite well aware" of what he did. ***Id.*** at 30.

---

[3] "Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement . . . ." 42 Pa.C.S.A. § 9714(a)(1).

For its part, the Commonwealth introduced into evidence a recording and transcript of the 911 call Mrs. Brown made during the attack. She had been able to secrete her cell phone behind a pillow on the couch while Brown was in the kitchen looking for knives, as he had broken the blades of the knives he brought with him while stabbing Barton. *Id.* at 20. During the 911 call, Brown was heard yelling, "You know what you did to me. He [is] gonna die. You [are] definitely gonna to [sic] die. And he [is] gonna to [sic] die first." *Id.* at 45. Additionally, the Commonwealth introduced into evidence a letter that Brown sent to his wife a week after the attack. In the letter Brown expressed no remorse for attacking Barton. *Id.* at 40. Brown testified, "I [am] 47, and because of my actions, now I [am] going to have to live with them. But I would like to turn back the clock. I do pray for Mr. Barton all the time." *Id.* at 60.

Prior to imposing sentence the trial court stated, "After looking at the injuries that you inflicted upon Mr. Barton, it [is] fortunate for him and fortunate for you that he did not die from these injuries." *Id.* at 68. The court then imposed the following consecutive sentences: 18 to 40 years' incarceration for attempted murder, 10 to 20 years' incarceration for burglary, and four to 10 years' incarceration for aggravated assault, for an aggregate sentence of 32 to 70 years' incarceration.

Brown filed a post-sentence motion the following day. At a hearing on the motion, Brown presented testimony from Dr. Atkins, his mother, and his sister. Dr. Atkins testified that over several visits, he spent approximately nine

hours with Brown and after those meetings, he diagnosed Brown with the above-referenced conditions. N.T., Post-Sentence Motion Hearing, 08/21/17, at 5. However, he clarified that he was "not identifying a nexus between any of these conditions and [Brown's] behavior." *Id.* at 8. Brown's mother and sister testified that Brown was a good son and brother.

The Commonwealth introduced into evidence recordings and transcripts of phone calls between Brown and an unknown female while Brown was in prison. *Id.* at 22-23. The following was recorded in August 2016:

> [Brown]: [Barton] talking about "Can I call my kids?" I said "Bitch! Fuck you! I [am] gonna kill you!" [Laughing]
>
> [Female]: [Laughing]
>
> [Brown]: [Laughing] I tortured the boy for two hours and I was smoking cigarettes and then [Barton] (unintelligible) on me and then I said "Matter of fact put the cover over your face." So [Barton] put the cover over his face and I said "If I see your eye, I [am] gonna stab you again." Then the cover fell over and I stabbed [Barton] again.
>
> ***
>
> [Brown]: And every time that mother fucker wake up he [the victim], gonna think about me. [Laughing]

Prison Call Transcript, 8/17/16, at 1.

The Commonwealth also introduced a phone call that occurred between Brown and his mother, the day after he was sentenced:

> [Brown]: I made the front page paper.
>
> [Brown's Mother]: Oh my God.

- 5 -

[Brown]: I made it up here. They blew that shit up, Mom. They said, I just came out to get in the shower, it said "Man pleads guilty on Valentine's Day Massacre." [Laughing]

\*\*\*

[Brown's Mother]: You gotta send me that clipping.

[Brown]: I am. Soon as I get it I [will] send it out to you cause I know ya'll do [not] get that paper down there. Soon as I get it here, I [will] send it out to you. [Laughing]

\*\*\*

[Brown]: . . . I [am] already in good spirits but that paper when I read that paper, I [am] coming out and sending it right to you though. [Laughing] I started laughing.

Prison Call Transcript, 7/27/2017, at 1-2.

Additionally, the Commonwealth presented testimony from Barton's sister, who read Barton's victim impact statement to the court. *Id.* at 27-28. This letter expressed the irrevocable change the attack had on Barton's life, including constant pain and no longer being able to enjoy playing with his children. *Id.* at 27. Brown then testified, apologizing to Barton and his family. He explained that the laughing on the prison calls was "a coping mechanism for [him]." *Id.* at 29.

Defense counsel asked the court to resentence Brown to a minimum sentence of 23 years' incarceration, and also stated that Brown pled guilty "to guidelines using the [DWE]" for the aggravated assault charge. *Id.* at 31, 37. The trial court later explained in its Pa.R.A.P. 1925(a) opinion that it "understood that the [DWE] was not to be applied to [Brown's] sentence . . . and did not apply it." TCO at 2. This timely appeal followed.

Brown raises two issues for this Court:

- 6 -

> 1. Did the trial court err in applying the Deadly Weapon Used Enhancement to the offense of Aggravated Assault[,] 18 Pa.C.S.A. § 2702(a)(4)?
>
> 2. Did the trial court abuse its discretion in sentencing Mr. Brown?

Brown's Br. at 10.

Both of Brown's issues center on discretionary aspects of sentencing. As such, we must conduct a four-part inquiry before reaching the merits of the claims. **Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa.Super. 2013). We must determine whether: (1) the appeal is timely, (2) the instant issues were properly preserved, (3) the appellant's brief contains a statement pursuant to Pa.R.A.P. 2119(f),[4] and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. **Id.**

We address each issue Brown has raised separately, as he has preserved one claim and waived the other. First, Brown contends that the trial court erroneously applied the DWE, which raises a substantial question. **See Commonwealth v. Rhoades**, 8 A.3d 912, 916 (Pa.Super. 2010). This issue was preserved, the appeal is timely, and he has included a Pa.R.A.P. 2119(f) Statement in his brief. Brown's Br. at 11. Therefore, we will address the merits of the issue.

---

[4] "An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence." Pa.R.A.P. 2119(f).

We review discretionary sentencing decisions for abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (quoting *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003)).

The DWE does not apply to a conviction for an offense for which possession of a deadly weapon is an element of the offense. 204 Pa.Code § 303.10(a)(3)(ix); *Rhoades*, 8 A.3d at 917. Brown is correct that the provision of the aggravated assault statute under which he was convicted, 18 Pa.C.S.A. § 2702(a)(4), is such an offense. *See Commonwealth v. Childs*, 664 A.2d 994, 997 n.2 (Pa.Super. 1995); *see also* 204 Pa.Code § 303.10(a)(3)(vi) (providing that DWE does not apply to convictions under Section 2702(a)(4)).

However, he is wrong that the trial court applied the DWE to his aggravated assault conviction. He relies on the fact that the trial court sentenced him in the aggravated range for aggravated assault, to support his this argument. *See* Brown's Br. at 13. However, as stated above, the trial court explained in its Pa.R.A.P. 1925(a) opinion that it "understood that the [DWE] was not to be applied to [Brown's] sentence . . . and did not apply it." TCO at 2. The court also explained that it sentenced him above the Sentencing Guidelines on the aggravated assault conviction "due to the nature,

savagery[,] and length of the attack." *Id.* at 2-3. Brown's argument is meritless and the trial court did not err in imposing the sentence.

Brown next contends that the trial court imposed a sentence outside of the Sentencing Guidelines without stating its reasons on the record. Brown's Br. at 11. While this issue does raise a substantial question, the issue was not preserved. *See Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super. 1999) (contention that trial court failed to state reasons for sentencing outside of Sentencing Guidelines, raises a substantial question). Brown did not raise this issue with the trial court and as such it is waived on appeal. *See* Pa.R.A.P. 302(a) (issues not raised with trial court are waived on appeal); *see also Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003) (issues challenging discretionary aspects of sentencing must be raised in post-sentence motion or raised during sentencing proceedings).

Even if Brown had preserved this argument for appellate review, we would still conclude that no relief is due. When imposing a sentence that deviates from the Sentencing Guidelines, the trial court must consider all relevant factors, including the individual character of the defendant and the individual circumstances of the offense, and impose a sentence "that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." *Commonwealth v. Eby*, 784 A.2d 204, 207 (Pa.Super. 2001). Additionally, whenever a court imposes a sentence for a felony or misdemeanor, the court must state on the record its

reasons for doing so. *See* 42 Pa.C.S.A. § 9721(b). However, "[a] lengthy discourse on [its] sentencing" is not required. *Commonwealth v. McAfee*, 849 A.2d 270, 275 (Pa.Super. 2004). As long as the record demonstrates that the court meaningfully weighed the Sentencing Guidelines, the facts of the crime, and the defendant's character, we should affirm the sentence. *Commonwealth v. Begley*, 780 A.2d 605, 643 (Pa. 2001).

The trial court sufficiently stated its reasons for the sentence at both the sentencing hearing and again during the post-sentence motion hearing. At sentencing, the trial court stated how it was lucky for both the victim and Brown that the victim did not die. *See* N.T., Sentencing Hearing, 7/26/17, at 68. Moreover, at the post-sentence motion hearing, the trial court further elaborated on its reason for the sentence:

> Although today's additional information and evidence is important, that really does not change my view in that . . . the sentence needed to extend beyond the guidelines because of the nature of the offense, of the attack, the torture and the prolonged attack. This was not something that was just a spur of the moment, that happened in a few seconds and then was regretted but during the course of the attack, Mr. Brown, it [is] almost as though you were relishing what you were doing . . . ."

N.T., Post-Sentence Motion Hearing, 8/21/17, at 43.

The sentence imposed was within the agreed upon aggregate minimum sentencing range and "was consistent with the protection of the public, the gravity of [Brown's] offense, and [Brown's] rehabilitative needs." TCO at 5; *see Eby*, 784 A.2d at 207. The record supports the trial court's conclusion

that Brown "earned every day of the sentence imposed against him," and we perceive no abuse of discretion. TCO at 5.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/22/18