J-A14001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| M. K. S. | : | |
| | : | |
| Appellant | : | No. 2273 EDA 2017 |

Appeal from the Judgment of Sentence June 16, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0005745-2016

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED SEPTEMBER 05, 2018**

Appellant, M.K.S., appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his open guilty plea to aggravated assault and endangering the welfare of children ("EWOC").[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history.  Therefore, we have no need to restate them. We add the court ordered Appellant on August 11, 2017, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on August 31, 2017.

Appellant raises one issue for our review:

> DID THE [TRIAL] COURT ERR IN IMPOSING A SENTENCE OF

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and 4304(a)(1), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

NOT LESS THAN TEN NOR MORE THAN TWENTY-ONE YEARS' INCARCERATION, THE SAME SENTENCE AS [APPELLANT'S] CO-DEFENDANT WIFE, WHEN APPELLANT DISTINGUISHED HIMSELF FROM HIS CO-DEFENDANT IN THE FOLLOWING WAYS: APPELLANT PLED GUILTY TO AGGRAVATED ASSAULT REGARDING ONE VICTIM, WHEREAS THE CO-DEFENDANT PLED GUILTY REGARDING TWO VICTIMS; THE CO-DEFENDANT'S AGGRAVATED ASSAULT INVOLVED A COURSE OF CONDUCT WHEREAS APPELLANT'S INVOLVED A BRIEF, MOMENTARY INCIDENT; APPELLANT HAD COOPERATED WITH THE COMMONWEALTH AND AGREED TO TESTIFY AGAINST HIS CO-DEFENDANT; AND APPELLANT PROVIDED HIS DRUG ADDICITON HISTORY AS A BASIS FOR HIS ACTIONS?

(Appellant's Brief at 4).[2]

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *See* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *See* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42

---

[2] "[W]hile a guilty plea which includes **sentence negotiation** ordinarily precludes a defendant from contesting the validity of his…sentence other than to argue that the sentence is illegal or that the sentencing court did not have jurisdiction, **open** plea agreements are an exception in which a defendant will not be precluded from appealing the discretionary aspects of the sentence." *Commonwealth v. Tirado*, 870 A.2d 362, 365 n.5 (Pa.Super. 2005) (emphasis in original). "An 'open' plea agreement is one in which there is no negotiated sentence." *Id.* at 363 n.1. Here, Appellant's plea was "open" as to sentencing, so he can challenge the discretionary aspects of his sentence.

Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing. ***Commonwealth v. Mann***, 820 A.2d 788 (Pa.Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003). ***See also Commonwealth v. May***, 584 Pa. 640, 887 A.2d 750 (2005), *cert. denied*, 549 U.S. 832, 127 S.Ct. 58, 166 L.Ed.2d 54 (2006) (reiterating absence of specific and contemporaneous objection waives issue on appeal).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. ***Commonwealth v. Mouzon***, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). The concise statement must indicate "where the sentence falls in relation to the sentencing guidelines and what particular provision of the code it violates." ***Commonwealth v. Kiesel***, 854 A.2d 530, 532 (Pa.Super. 2004) (quoting ***Commonwealth v. Goggins***, 748 A.2d 721, 727 (Pa.Super. 2000), *appeal denied,* 563 Pa. 672, 759 A.2d 920 (2000)). The statement must also specify "what fundamental norm the sentence violates and the manner in which it violates that norm." ***Kiesel, supra*** at 532.

As a prefatory matter, Appellant failed to raise during the sentencing hearing any challenge to his sentence. Additionally, Appellant's reconsideration motion does not include his claim that the sentencing court failed to consider Appellant's history of drug addiction. Further, Appellant did not meet the minimal requirements of Rule 2119(f). In large part, Appellant's Rule 2119(f) statement is a recitation of authority relevant to a challenge to discretionary aspects of sentencing. Appellant's statement fails to articulate what fundamental norm of sentencing the court violated or to indicate how his sentence violates that norm. *See Kiesel, supra*. Rather, Appellant baldly and briefly asserts his sentence is manifestly excessive in light of his guilty plea and history of drug addiction. Because Appellant failed to include his claims in full at sentencing and in his post-sentence motion, and his Rule 2119(f) statement is inadequate, Appellant has arguably waived his challenges to the discretionary aspects of his sentence. *See Mann, supra*; *Mouzon, supra*. *See also Commonwealth v. Cannon*, 954 A.2d 1222 (Pa.Super. 2008) (reiterating inadequate Rule 2119(f) statement constitutes failure to raise substantial question as to discretionary aspects of sentence).

Moreover, even if Appellant had properly preserved his claims, he would not be entitled to relief. (*See* Trial Court Opinion, filed 12/15/17, at 4-9) (finding: at sentencing hearing, court stated it considered nature and circumstances of Appellant's and co-defendant's crimes, as well as history, character, and condition of Appellant and co-defendant; court explained it

considered Appellant's background and actions in comparison to co-defendant's background and actions; sentencing court also considered Appellant's history of drug addiction; sentencing court stated it found little difference between two co-defendants' conduct, because both consciously and repeatedly chose to engage in behavior that injured their children; Appellant admitted at guilty plea hearing that he failed to call for help when co-defendant mistreated children over period of time; sentencing court properly considered all evidence and sentencing factors under 42 Pa.C.S.A. § 9721(b) when it sentenced Appellant).[3]   The record supports the court's rationale. Therefore, even if Appellant had properly preserved his issues, we would affirm based on the trial court opinion.  **_See generally In re K.L.S._**, 594 Pa. 194, 197 n.3, 934 A.2d 1244, 1246 n.3 (2007) (stating where issues are waived on appeal, we should affirm).

Judgment of sentence affirmed.

_____

[3] To the extent Appellant claims the court failed to consider at sentencing Appellant's agreement to testify against his co-defendant wife, that promise was essentially illusory.  **_See_** 42 Pa.C.S.A. § 5913(2) (stating in part: "[I]n a criminal proceeding a person shall have the privilege, which he…may waive, not to testify against his…then lawful spouse except that there shall be no such privilege: … (2) in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them…").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/5/18

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA :
:
               **NO. CP-09-CR-0005745-2016**
          v. :
M. K. S. :
:
:

### OPINION

M. K. S. ("Appellant") appeals this Court's June 16, 2016 Judgment of Sentence to the Pennsylvania Superior Court. We file this Opinion pursuant to Pennsylvania Rule of Appellate Procedure § 1925(a).

### I. PROCEDURAL HISTORY

Appellant was charged with one count each of Aggravated Assault[1], Conspiracy to commit Aggravated Assault[2], Endangering the Welfare of Children[3], and Recklessly Endangering Another Person.[4] The Commonwealth was granted leave to *nolle pross* the charges of Conspiracy to commit Aggravated Assault and Recklessly Endangering Another Person, and on May 22, 2017, Appellant pled guilty to Aggravated Assault and Endangering Welfare of Children. Sentencing for these crimes was deferred to June 16, 2017. On that date Appellant was sentenced to pay the costs of prosecution and serve a term of incarceration in a State Correctional Institution of not less than eighty-four (84) nor more than one hundred sixty-eight (168) months for the charge of Aggravated Assault. Appellant was sentenced to serve a consecutive term of incarceration of not less than thirty-six (36) nor more than eighty-four (84) months for the charge of Endangering the Welfare of Children. He was given credit for time served from May 15, 2016. Appellant filed a

---

[1] 18 Pa.C.S.A. § 2702(a)(1)
[2] 18 Pa.C.S.A. § 903
[3] 18 Pa.C.S.A. § 4304(a)(1)
[4] 18 Pa.C.S.A. § 2705

1

Motion for Reconsideration of Sentence on June 23, 2017, which this Court denied without a hearing on June 30, 3017. On July 17, 2017, Appellant filed a timely Notice of Appeal to the Superior Court.

## II. FACTUAL BACKGROUND

The facts of the case, as read into the record by the Assistant District Attorney at Appellant's guilty plea on May 22, 2017, and agreed to by Appellant without objection, are as follows:[5]

> On Monday, March 21, 2016, at approximately 10:17 p.m., Bucks County Police Radio received a 911 call from M. S. that her child was in respiratory distress.
>
> Tullytown Borough Police were dispatched to the residence at 555 Main Street, Apartment E, in Tullytown Borough, Bucks County. Police arrived on scene and were met by M. S. , who was holding baby K. S. 1 , a 2-month old infant. The defendant before you, Appellant , the father of the baby, was in the kitchen area of the apartment. K.S. 1 was born on January 22, 2016, along with her twin sister, K.S.2, and were the biological daughters of Appellant and M. S.
>
> When police arrived, K. S. 1 had a pale complexion. She was gurgling and she had shallow breathing. Her eyes were squinting and dried blood was observed under her nostrils. Appellant came over with a suction device, picked up K.S. 1 and begun [sic] to suction mucus out of the baby's mouth while walking around. Appellant then gave K. S. 1 back blows, at which point K.S. 1 began to cry and become alert. Both parents were asked what happened.
>
> Police were then informed that K.S.1 had some type of cloth lodged in her throat. Both Appellant and M. S. informed police that they tried removing the cloth with their fingers, and they thought the baby's gums were cut from their nails.
>
> Also in the apartment were Appellant's and M. S. 's other children, K.S. 2 and T. S. , a two-year-old boy. Police entered the home and condition of the home was deplorable. There were clothes, toys, tools, soiled diapers, and dirty dishes scattered throughout the living room and on the kitchen floor. The house was so cluttered that police were unavoidably stepping on items as they walked. Police also noticed a .223 rifle ammunition round lying on the floor, accessible to

---

[5] N.T. 5/22/17, pp. 22-29.

2

the children. Additionally, drug paraphernalia was scattered throughout the home, including needles in drawers or hanging in pouches.

Earlier in the day *Appellant* had gone to the Kensington section of Philadelphia and purchased $120 worth of heroin. After being gone for two hours, he returned home to *M. S.* and the children. When he walked in, *M. S.* was feeding *K.S. I* with a bottle. She inquired of his whereabouts. When she learned that he was out purchasing drugs, she became enraged. She picked up *K.S. I* by her onesie and threw her into the daybed where *K.S. I* hit the aluminum rails of the daybed, landing on her back on the bed. Neither *Appellant* nor *M. S.* sought medical care for *K. S. I.*

After this incident, *M. S.* immediately left the apartment. After *M.S.* left, *Appellant* shot up the heroin he had just purchased. While *K.S. I* was in the care of *Appellant*, he tried to wipe the inside of her mouth with a gauze pad. He left the gauze in her mouth and became distracted and the baby started choking. He was extremely high and tried to use his fingers to get the gauze out, which was deep in the back of her throat. He then used a pair of two-inch pliers to try to retrieve the object, lacerating her throat all the way back to her esophagus. Because of this, *K.S. I* suffered severe bruising on the middle roof of her mouth, bruising on the tonsils found in the back of her tongue on either side of her mouth, and a large bruise to the back wall of her throat extending into her esophagus. As a result of *Appellant's* actions, *K.S. I* had to be intubated to breathe and subsequently required a G-tube for feeding.

It was later determined that *K. S. I* also suffered femur and tibia fractures. *K.S. I* also had multiple lacerations to her vagina. *K. S. I's* vagina was extremely red, bruised and displayed excoriations around the hymen. There was a .5 centimeter bruise from the back of the vagina to the anus. Both *Appellant* and *M. S.* admitted to leaving *K.S. I* in soiled fecal diapers for multiple hours at a time.

Approximately one week prior to March 21, 2016, *K.S I* was being bathed by *M. S.* when she grabbed *K.S. I* by the leg. She felt and heard a pop. After this incident, and for an entire week, both *Appellant* and *M. S.* attempted to pop and twist the leg back into place, potentially worsening or reinjuring the leg. Neither *Appellant* nor *M. S.* called a doctor or took *K. S. I* for medical care that entire week.

The injuries to *K. S. I's* leg included a distal left femur fracture, linear lucency of the medial aspect of the right distal femoral metaphysis, and bilateral tibial lucencies, representative of non-displaced fractures. Her leg was so swollen that when *K.S. I* was finally seen by a doctor she was wearing a size twelve month pants to accommodate the swelling at two months of age. *K.S. I* weighed just over seven pounds at the time she was seen by a professional.

On March 20, 2016, *M. S.* and *Appellant* were arguing with one another at their residence. While they were fighting, *M. S.* was holding *K.S.I* in a burping position against her shoulder. *M. S.* got so mad that she turned and forcefully threw *K.S. I* into her swing. *K.S.I* immediately started crying. *M. S.* said that when *K.S.I* fell into the swing, she was cocked to the left side and landed hard on that side. *M. S.* stated it appeared that *K.S. I* was favoring her left side to take pressure off of the side after being thrown down. *Appellant* was present for this.

Both *M. S.* and *Appellant* knew that *K.S. I* was injured from this incident but did not seek medical attention for *K.S.I* or take her for any follow-up care with a doctor. As of March 21, 2016, *K.S.I* weighed just 7.05 pounds. Her low weight was due to inadequate provision of calories and neglect. Once her respiratory issues were addressed and a G-tube for feeding was placed, she demonstrated proper weight gain on normal infant formula.

\*\*\*

The aforementioned injuries to *K. S. I* were all determined to be non-accidental trauma by experts at St. Christopher's Hospital. *K.S. I* 's injuries were severe and lead to life-threatening distress, requiring a two-month hospitalization.

## III. STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On August 10, 2017, this Court issued an Order pursuant to Pennsylvania Rule of Appellate Procedure § 1925(b) requiring Appellant to file a Concise Statement of Errors Complained of on Appeal no later than twenty-one (21) days after entry of the Order. On August 31, 2017, Appellant filed this Concise Statement raising the following issues, *verbatim*:

1. Whether the trial court erred in weighing the aggravating and mitigating factors of sentencing, wherein the co-defendant, who is not similarly situated, received the same aggravated [sic] as Appellant despite distinct differences in their background and actions, including, but not limited to:
   a. the co-defendant/wife was sentenced on Aggravated Assault for two victims (the co-defendant's twin daughters), whereas *Appellant* plead guilty to Aggravated Assault and was sentenced for only one victim,
   b. that the co-defendant/wife's plea on Aggravated Assault (for both daughters) involved a course of conduct, whereas *Appellant* conviction on Aggravated Assault for one daughter involved a brief, momentary incident,
   c. that only the Appellant was given credit by the Commonwealth for cooperating and agreeing to testify against his co-defendant, and
   d. where Appellant provided his drug addiction history as the basis for his actions whereas his wife/co-defendant presented no such mitigation?

4

## IV. DISCUSSION

Appellant claims this Court erred in imposing the same sentence as that of his co-defendant, *M. S.* Appellant challenges this Court's sentence to serve a term of incarceration of not less than eighty-four (84) nor more than one hundred sixty-eight (168) months and a consecutive term of incarceration of not less than thirty-six (36) nor more than eighty-four (84) months. This is a challenge to the discretionary aspects of sentence.

The standard of review in sentencing matters is well settled. A sentence will not be overturned unless the record shows a manifest abuse of discretion, which is more than mere error in judgment. Commonwealth v. Redman, 864 A.2d 566, 569 (Pa. Super. Ct. 2004). A manifest abuse of discretion may be found only where the record establishes that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. Commonwealth v. Rodda, 723 A.2d 212, 214 (Pa. Super. Ct. 1999). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness...or such lack of support so as to be clearly erroneous." Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007) (quoting Grady v. Frito–Lay, Inc., 839 A.2d 1038, 1046 (Pa. 2003)).

The decision of the sentencing judge should be given great deference. Walls, 926 A.2d at 961. In reviewing sentencing matters, the decision of the sentencing court is accorded great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. Commonwealth v. Fries, 523 A.2d 1134 (Pa. Super. Ct. 1987), allocatur denied, 531 A.2d 427 (Pa. 1987). The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the

5

sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." Commonwealth v. Ward, 568 A.2d 1242, 1243 (Pa. 1990); see also Commonwealth v. Jones, 613 A.2d 587, 591 (Pa. Super. Ct. 1992) (en banc) (offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime.").

When imposing a sentence, a court must consider the factors set forth in 42 Pa.C.S.A. § 9721(b). Specifically, the court shall consider the protection of the public, the gravity of the offense as it relates to the impact on the victim and the community, the defendant's rehabilitative needs, and the Sentencing Guidelines. 42 Pa.C.S.A. § 9721(b); Walls, 926 A.2d at 961. As to the Sentencing Guidelines, the court in Walls, reaffirmed the guidelines "have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors - they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence." Id. at 964-965.

Where the sentence imposed exceeds the sentencing guidelines, the sentence will not be overturned unless that sentence was "unreasonable." 42 Pa.C.S.A. § 9781(c)(3); Id. at 963-964. Significantly, our Supreme Court has "decline[d] to fashion any concrete rules as to the unreasonableness inquiry...." Commonwealth v. Holiday, 954 A.2d 6, 11 (Pa.Super.2008) (quoting Walls, 926 A.2d at 963). "[A] sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, i.e., the protection of the public;

the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant." Walls, 926 at 964 (citing 42 Pa.C.S. § 9721(b)).

In this case, the Court considered each statutory factor listed in 42 Pa.C.S.A. § 9721(b) and the evidence offered by the Commonwealth at the guilty plea and the mitigation evidence offered by Appellant at sentencing. This Court stated its reasons for imposing Appellant's sentence on the record:

> The law requires that I consider several factors when I impose sentence. I have to consider the gravity of the offense as it relates to the impact on the life of the victim and the life of these children. They will bear the scars of this forever if they can recover physically, yet [sic] alone emotionally.
>
> It was conduct that caused serious harm to other human beings. And there were no grounds that would tend to excuse or justify the conduct in this case. It's horrific. It shakes my faith in human beings.
>
> I do and will consider the defendant's lack of criminal history. I do and will consider the rehabilitative needs of the defendants. And I will and do consider the fact that drugs were involved, and that the defendants do feel extreme remorse for their conduct. If I didn't consider those factors, I would give the absolute maximum sentence permitted by law because the horrific and horrendous facts seem to call for that. But I do consider that mitigation. I consider the nature and the circumstances of the crime, the history, character and condition of the defendants, and I determine that the defendants are both in need of correctional treatment that can be provided most effectively by commitment to a State Correctional Institution. And I also consider that any lesser sentence would depreciate the seriousness of the crime.

N.T. 6/16/17, pp. 69-70. This Court clearly articulated its consideration of the backgrounds and actions of Appellant as compared to his co-defendant, *M. S.* Testimony about background, specifically Appellant's history of drug addiction was taken into consideration:

> And before I came to this courtroom today, I expected to hear evidence, even though I had read all of the sentencing memorandums and thought about this case at length, that might somehow explain how these two babies could be treated the way that they were treated. And instead what I heard through stories and what I see and believe is that both of these defendants were raised in good families. Both of these defendants were raised with privileges. Both of these defendants were

7

raised by good parents and good siblings. And it becomes even more inconceivable to me how this could happen.

I understand what drug addiction does to people. I understand that it makes them steal, cheat, lie, hide, manipulate. I understand that. Those are regular results of drug addiction. I have never seen it cause physical injury to other people. Drug addiction doesn't do that. Sure it makes you steal, it makes you lie. It makes you do what you can to get drugs. But it doesn't make you cause physical harm to people who you love, to your own babies.

N.T. 6/16/17, pp. 66-68.

Appellant also argues this Court failed to consider the "distinct difference" between conduct of his co-defendant *M. S.* and Appellant. Specifically, *M. S.* plead guilty to two counts of aggravated assault which involved a course of conduct, while, according to Appellant, he plead guilty to a single count of aggravated assault which involved a "brief, momentary incident." At sentencing, however, this Court stated on the record it found little difference between the two defendants' conduct, as both made conscious decisions that repeatedly resulted in injury to their daughters during their first two months of life:

I can't understand how any parent, any parent, would cause the injuries that were caused here. I haven't heard any explanation that could be acceptable. I don't know that there is one.

And I don't understand how any parent could fail to seek medical treatment for their child when they were injured. I don't care how they were injured.

How could you make a conscious decision to inflict injury on your own children, or how could you make a conscious decision not to seek medical attention for your child when your child is suffering like this?

I have to agree with the district attorney when she argues that the two months of life for these children were the definition of torture. I believe that both of these parents tortured their children. And I can't separate them. I can't distinguish the difference in conduct because I don't know what's worse, to injury [sic] a child or to fail to take the child for treatment.

8

N.T. 6/16/17, pp. 68-69. Furthermore, Appellant admitted at the guilty plea that his conduct was not a "brief, momentary incident," but rather a course of conduct over a period time. This Court advised him at the guilty plea:

> [T]he allegation from the district attorney is that from January the 22nd through March the 21st of 2016, you attempted to cause bodily injury to another, or you cause such injury intentionally, knowingly, or recklessly, under circumstances manifesting extreme indifference to the value of human life. The victims in this case are identified as Child 1 and/or Child 2. My understanding is they are children of yours and they are twins.

N.T. 5/22/17, pp. 17-18. Appellant admitted his twin daughters lived in his and *M. S.'s* custody since they were born on January 22, 2016. Id. at 30. Appellant also admitted he watched *M. S.* throw *K.S. 1* like a rag doll, heard *K.S. 1* cry every time she was abused, and never called for help, including the choking incident on March 21, 2016. N.T. 5/22/17, pp. 36-37, 40. Accordingly, this Court properly considered all of the evidence and all of the appropriate sentencing factors listed in § 9721(b) when it determined the sentence imposed, and the reasons underlying the sentence were clearly stated on the record.

## V.   CONCLUSION

For the above reasons, this Court respectfully submits Appellant's appeal lacks merit and should be dismissed.

BY THE COURT:

12-14-2017
DATE

RAYMOND F. MCHUGH, J.

9