J-A03028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VAUGHN EDWARD LEWIS | : | |
| | : | |
| Appellant | : | No. 907 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 5, 2023
In the Court of Common Pleas of Cameron County Criminal Division at
No(s): CP-12-CR-0000026-2021

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: May 30, 2024**

Vaughn Lewis appeals from the judgment of sentence imposed following revocation of his probation for technical violations. He challenges the discretionary aspects of his new sentence. Upon review, we affirm.

On December 15, 2020, Lewis was arrested and incarcerated for burglarizing a camp in McKean County. While in jail for that burglary, on December 20, 2020, Lewis called Thomas Werstler. Lewis threatened to kill Werstler's nephew and great nephew for his nephew's involvement in the burglary. Lewis was charged with several offenses.

On October 6, 2021, Lewis pled guilty to terroristic threats.[1] The trial court sentenced Lewis to 36 months' probation, to run concurrently to sentences he was serving in two other cases.

---

[1] 18 Pa.C.S.A. § 2706(a)(1).

On January 25, 2023, while serving that sentence of probation, Lewis was arrested and charged with several new offenses. As a result, the Cameron County Adult Probation Department issued a petition to revoke Lewis' probation on February 9, 2023.

On March 21, 2023, Lewis pled guilty to harassment, and was sentenced.

On April 18, 2023, the court held a violation of probation ("VOP") hearing on the petition to revoke Lewis' probation. Upon objection by Lewis' counsel, the probation department amended its petition to specify the offense to which Lewis pled guilty, *i.e.*, harassment. The court then found that Lewis violated his probation based upon his conviction for harassment and revoked his probation. Sentencing was deferred.

On May 23, 2023, the VOP court resentenced Lewis to a new 36-month term of probation. Additionally, the court imposed several special conditions that Lewis was directed to follow.

On June 26, 2023, just a month later, the probation department filed another petition to revoke Lewis' probation for technical violations. These included Lewis' failure to: attend three scheduled appointments with his probation officer; apply for Social Security benefits; address his physical health and schedule a doctor's appointment; and obtain and maintain mental health treatment with medication management. Lewis was detained.

On July 5, 2024, after a hearing, the VOP court found that Lewis violated his probation for the reasons set forth in the petition. As a result, the court

revoked his probation and resentenced him to 9 to 36 months' incarceration, with 9 days credit for time served. Lewis filed a motion to modify his sentence, which the court denied.

Lewis filed this timely appeal. He and the VOP court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Lewis raises the following two issues:

1. Whether the trial court erred by failing to consider the appropriate "structural environment" for [Lewis] in determining the placement of his incarceration?

2. Whether the trial court erred by not imposing the minimum sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant?

*See* Lewis' Brief at 6-7.

Lewis challenges the discretionary aspects of his sentence. A challenge to the discretionary aspects of a sentence, following probation revocation, does not entitle an appellant to review as of right; rather, such a challenge must be considered a petition for permission to appeal. *See Commonwealth v. Kalichak*, 943 A.2d 285, 289 (Pa. Super. 2008). Before reaching the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

(1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, [by failing to include a Pa.R.A.P. 2119(f) statement]; and (4) whether there is a substantial

- 3 -

question that the sentence appealed from is not appropriate under the Sentencing Code, [see] 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (internal citation and brackets omitted).

Here, Lewis satisfied the first three requirements under ***Moury***. Accordingly, we must determine whether Lewis has raised a substantial question.

In his Rule 2119(f) statement, Lewis first claims that the trial court abused its discretion by imposing a sentence of total confinement following revocation of probation solely based on technical violations particularly given his mental health needs. Lewis' Brief at 15. The imposition of a sentence of total confinement after revocation of probation for a technical violation, and not a new criminal offense, implicates the "fundamental norms which underlie the sentencing process" raising a substantial question. ***Commonwealth v. Crump***, 995 A.2d 1280, 1282 (Pa. Super. 2010); ***Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006) (claim that particular probation revocation sentence is excessive in light of its underlying technical violations can present a question that this Court should review).

Lewis also claims that the VOP court abused its discretion by imposing a minimum sentence that was not consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. Lewis' Brief at 22. This Court has held that such a claim may raise a substantial question permitting our review. ***Commonwealth v. Serrano***,

150 A.3d 470, 473 (Pa. Super. 2016). Therefore, we will address Lewis'

sentencing claims.

This Court has stated:

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment — a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. [U]pon revocation [of probation] ... the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence.

*Commonwealth v. Colon*, 102 A.3d 1033, 1044 (Pa. Super. 2014)

(quotations and citations omitted).

When imposing a probation revocation sentence, the trial court must

follow the general principle that the sentence be "consistent with the

protection of the public, the gravity of the offense as it relates to the impact

on the life of the victim and on the community, and the rehabilitative needs

of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, where probation has

been revoked, a sentence of total confinement may only be imposed if:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S.A. § 9771(c). In all cases where the trial court resentences an offender following revocation of probation, the trial court must place its reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b); *Commonwealth v. Cartrette*, 83 A.3d 1030, 1040–1041 (Pa. Super. 2013). "A trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Crump*, 995 A.2d at 1282–83.

In his first issue, Lewis claims that the VOP court abused its discretion when it imposed an excessive sentence of confinement based only on technical violations without considering his need for mental health treatment. Lewis' Brief at 18. Lewis argues that his mental health evaluation "raised psychiatric concerns and explicitly recommended settings conducive to treatment, including but not limited to a state psychiatric hospital" or LTSR. *Id.* Lewis maintains that the court failed to consider and explain why those recommendations were not adequate, and as such, the record does not support incarceration for his technical violations. *Id.* at 19-21. In support of his position that we should vacate his sentence, Lewis cites *Commonwealth v. Edward*, 450 A.2d 15 (Pa. Super. 1982).

This Court has held that, "[t]echnical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate [a resistance] to reform." ***Commonwealth v. Carver***, 923 A.2d 495, 498 (Pa. Super. 2007). However, we have rejected lengthy incarceration sentences imposed solely based upon technical violations of probation on grounds of unreasonableness. ***Commonwealth v. Williams***, 69 A.3d 735 (Pa. Super. 2013); ***Commonwealth v. Parlante***, 823 A.2d 927 (Pa. Super. 2003). Given this Court's highly deferential standard of review, such relief should be afforded only in rare cases. ***Commonwealth v. Walls***, 926 A.2d 957, 964 (Pa. 2007).

Here, the VOP court sentenced Lewis to total confinement based on Lewis' likelihood of reoffending and the need to vindicate the court's authority. N.T., 7/5/23, at 46-48. In reaching this decision, the court relied in part on a pre-sentence investigation report ("PSI"). ***Id.*** at 40, 50. "Where the court is informed by a pre-sentence report, it is presumed that the court is aware of all sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009). Notably, this report indicated that Lewis' risk for reoffending was moderate.[2] The court found that Lewis' likelihood to reoffend was greater because he refused to follow its

---

[2] We observe that the probation department attempted to update this aspect of the PSI, but Lewis was unwilling to cooperate.

conditions of probation and get the help he needs.  N.T., 7/5/23, at 46-48. The mental health evaluation supported this conclusion.  *Id.* at 48.

Additionally, the VOP court considered Lewis' failure to comply with its conditions of probation.  In particular, the court noted Lewis' refusal to obtain mental health treatment.  In doing so, the court addressed Lewis' need for mental health treatment and the mental health evaluation's recommendation that Lewis be treated on an inpatient basis.  *Id.*; N.T., 7/25/23, at 11.  The court observed that Lewis denied having any significant mental health diagnoses and need for services and that, "Lewis does not want treatment." N.T., 7/5/23, at 44, 48.  The court further explained:

> He's had a demonstrated history of that.  And this court obviously tried to bring him into compliance with making certain he could be maintained in the community, but at some point in time obviously, if he's not complying with the order – the conditions this court imposes upon Mr. Lewis, that it certainly presents to this court an issue of the authority of this court over Mr. Lewis, and the court finds that as it related to the revocation proceedings, that – obviously to vindicate the authority of this court.

*Id.* at 48.

At the hearing on Lewis' post-sentence motion, the court elaborated:

> Mr. Lewis [] was never willingly engaged in any form of mental health or psychiatric services and would likely benefit from some form of medication management combined with psychotherapy to address impulse control and decision-making skills.

> [F]or the court to take into consideration the recommendation of [defense counsel] relative to probation with some sort of condition relative to him participating in mental health services whether they're on an inpatient or outpatient basis, the Court has done that.

- 8 -

\*\*\*

> As it relates to the [c]ourt's consideration of the mental health evaluation, I can appreciate and understand that after the fact of a sentence of total incarceration with the Pennsylvania Department of Corrections being imposed, that Mr. Lewis may very well be inclined [to willingly obtain mental health treatment]. But at some point the [c]ourt needs to make a credibility determination as to the sincerity [on] the part of Mr. Lewis as to his willingness to be able to engage in those services.

N.T., 7/25/23, at 17-18. Thus, contrary to Lewis' claim, the court considered the possibility of inpatient treatment. However, considering all the relevant sentencing factors which it was required to weigh, not only Lewis' mental health needs, the court did not find it was the appropriate decision.[3] N.T., 7/25/23, at 17.

The court also emphasized that it endeavored to provide Lewis with rehabilitation while remaining in the community. At Lewis' first probation revocation resentencing in May 2023, the court went to great lengths to afford Lewis with this opportunity. N.T., 7/25/23, at 18-19. Despite this, Lewis refused to follow the court's directives.

_____

[3] Lewis cites **Edward** to persuade this Court that his need for mental health treatment requires us to vacate his sentence. We disagree. Although this Court vacated Edward's sentence of incarceration based upon his mental state, the evidence there demonstrated severe mental illness. The VOP court found that Edward was "mentally ill and sometimes acutely schizophrenic [who] . . . when . . . psychotic . . . is dangerous" but nonetheless sentenced him to incarceration. **Edward**, 450 A.2d at 23. Here, the VOP court did not make such findings. Indeed, the evidence did not rise to that level of severity. Thus, we cannot justify vacating Lewis' sentence considering our highly deferential standard.

Lastly, we observe that the length of Lewis' sentence was not unreasonable.[4] Here, the standard range, minimum sentence was restorative sanctions to 9 months' incarceration. The court imposed a minimum sentence within the standard range, albeit at the top.

We therefore conclude that the court did not abuse its discretion when it sentenced Brown to a term of total confinement for his technical violations. Thus, Lewis' first issue fails.

In his second issue, Lewis claims that the VOP court abused its discretion when it did not impose the "minimum" sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. Lewis' Brief at 22. Lewis maintains, again, that the court failed to consider his mental health issues which affect his ability to comply with probation and his original offense occurred while he was in jail demonstrating that incarceration was not effective. *Id.* at 22-23. Lewis further argues that when he committed a new crime, he did not receive a sentence of incarceration, but now, the court incarcerated him for mere technical violations. *Id.* at 22, 25. According to Lewis, the court should have hospitalized or committed him for inpatient mental health treatment, which

---

[4] "For a technical violation resulting in the revocation of an order of probation, the resentencing guidelines shall be the same as the initial sentencing guidelines, pursuant to 204 Pa. Code Chapter 303 (relating to sentencing guidelines, 7th edition), with consideration given to any service of the original sentence." 204 Pa. Code § 307.3

would be an appropriate "minimum" sentencing alternative and protect the public, and should not have incarcerated him. *Id.* at 19, 24.

We observe that Pennsylvania's system stands for individualized sentencing. *Commonwealth v. Luketic*, 162 A.3d 1149, 1161 (Pa. Super. 2017). Thus, a court is required to impose a sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. However, Lewis' claim that the court is required to impose the "minimum sentence" consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant is incorrect. Our Supreme Court has explained:

> Prior to its 1978 amendment, the Sentencing Code at 18 Pa.C.S. § 1321(b), now found at 42 Pa.C.S. § 9721(b), provided that offenders receive the "minimum amount of confinement that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." In 1978, however, the Code was amended by deleting the "minimum amount of" language to now only require that confinement be consistent with concern for public protection, the gravity of offense and the rehabilitative needs of the defendant. Thus, under the current Sentencing Code there is no requirement that a sentencing court's imposition of sentence must be the minimum possible confinement and any suggestion . . . to the contrary is hereby rejected.

*Walls*, 926 A.2d at 965. Lewis' claim fails.

Based up our review of the record, we conclude that the trial court imposed a sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant based upon our review of the record.

The VOP court was very concerned with the protection of the public in light of Lewis' behavior. The PSI indicated that Lewis had threatened correctional staff, as well as his probation officer and law enforcement. When Lewis first appeared for supervision, he threatened to blow his probation officer's head off. He has made several threats of violence and bodily harm to the victims and police officers using firearms he claims to have even though he is prohibited from doing so. The mental health evaluation also indicated that Lewis was at a high risk of harming others. N.T., 7/25/23, at 16. In sentencing Lewis, the court explained:

> As it relates to the total incarceration recommendations, this court does have a legitimate concern, given Mr. Lewis' failure to comply with the May 23, 2023, Order of Court, that this is a danger to the community. In addition, the [c]ourt does find that he quite frankly presents perhaps a – with a danger to the agencies that interact with him, be it the sheriff's department as well as the other individuals. He makes these threats.

N.T., 7/5/23, at 47. The court found Lewis "to be a real threat . . . to the community." N.T., 7/25/23, at 15. We observe that Lewis continues to engage in conduct which led to his current situation but has not changed his behavior.

Along with its concern for the public's safety, the court considered Lewis' rehabilitative needs in relation to his mental health as discussed above. However, the court found that Lewis' rehabilitation in the community was not effective. When Lewis violated his probation for committing a new crime, the court was reluctant to resentence him to probation. But, in an effort to give

- 12 -

Lewis another chance to obtain services and remain in the community, the court crafted an order with special conditions. Lewis failed to take advantage of this, but now asks the court for yet another chance. As the court astutely noted, Lewis' conduct while on probation demonstrated that he does not respect the court's authority.

In sum, the VOP court sentenced Lewis consistent with the protection of the public, the gravity of the offense, and his rehabilitative needs and did not abuse its discretion. Thus, Lewis' second issue also fails.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/30/2024