J-S24036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ZACHARY LORENZO :
:
Appellant : No. 1111 WDA 2023

Appeal from the Judgment of Sentence Entered August 21, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004887-2018

BEFORE: BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: September 30, 2024**

Appellant, Zachary Lorenzo, appeals from the judgment of sentence imposed in the Court of Common Pleas of Allegheny County following revocation of his probation. Upon review, we affirm.

The trial court sets forth the relevant procedural history, as follows:

On October 22, 2018, Appellant, Zachary Lorenzo, pled guilty to one count of Child Pornography, one count of Criminal Use of a Communication Facility, and two counts of Corruption of Minors.[fn] [The trial court] sentenced him on January 14, 2019, to five years of probation in the aggregate. On November 14, 2022, [the trial court] found Appellant to have violated the terms of his probation. [The trial court] revoked probation and resentenced Appellant to a new period of five years' probation.

On August 21, 2023, [the trial court] found Appellant to have violated the terms of his probation again. [The trial court] revoked probation and resentenced Appellant to 2.5 to 5 years of incarceration and 5 years of consecutive probation.

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant filed a Notice of Appeal on September 19, 2023, and a Concise Statement of Errors Complained of on Appeal on October 10, 2023. . . . [In his Concise Statement,] Appellant asserts that the sentence imposed was manifestly excessive, unreasonable and an abuse of discretion, as the [trial court] failed to consider the rehabilitative needs of Appellant and the availability of rehabilitative services in his community.

Trial Court's Pa.R.A.P. 1925(a) Opinion, at 1-2.

The uncontested facts underlying Appellant's original convictions were presented at his guilty plea hearing, where it was recounted how, in 2017, a then 20-year-old Appellant developed two separate Snapchat relationships with juvenile girls, one a 14-year-old autistic girl and the other a 16-year-old girl. Appellant's communications with each girl quickly evolved to include sexual content, themes, and suggestions that they exchange self-photographs of their genitalia via Snapchat. In the case of the 14-year-old, her parents contacted police when they discovered that Appellant had sent her a photograph of his penis.

Police investigated Appellant and obtained through a consensual search of Appellant's smartphone many pictures of female genitalia sent to Appellant. From this information, detectives identified several screen names, which enabled them to locate and interview the 16-year-old girl.

In separate interviews, each girl described how she eventually complied with Appellant's continual requests that they exchange nude and sexually oriented photos and, eventually, videos, including ones where he masturbated to completion and asked the girl to do the same. The 14-year-old girl

confirmed that their nightly exchanges continued for more than one year, and the 16-year-old girl confirmed that she twice met Appellant in person, with one time involving sitting on his lap while hugging and "French-kissing" him.

In the present appeal, Appellant raises the following question for this Court's consideration:

> Did the Trial Court abuse its discretion by imposing a manifestly excessive sentence of incarceration when Mr. Lorenzo committed only technical violations of probation and by inordinately focusing on the gravity of the violations at the expense of Mr. Lorenzo's rehabilitative needs and mitigating evidence?

Brief of Appellant at 6.

Appellant challenges the discretionary aspects of the sentence imposed after his probation was revoked. A challenge to the discretionary aspects of a sentence, following probation revocation, does not entitle an appellant to review as of right; rather, such a challenge must be considered a petition for permission to appeal. *See Commonwealth v. Kalichak*, 943 A.2d 285, 289 (Pa. Super. 2008). Before reaching the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, [by failing to include a Pa.R.A.P. 2119(f) statement]; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [see] 42 Pa.C.S. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (internal citation and brackets omitted). As Appellant has satisfied the first three

requirements under **Moury**, we turn to whether he raised a substantial question about the appropriateness of his revocation sentence.

In Appellant's Rule 2119(f) statement, he posits that his issue raises two substantial questions. First, he claims the trial court abused its discretion by imposing a revocation sentence of total confinement solely based on technical violations. Appellant's Brief at 17. A sentence of total confinement imposed after revocation of probation for a technical violation, rather than for a new criminal offense, implicates the "fundamental norms which underlie the sentencing process" and, thus, raises a substantial question. **Commonwealth v. Crump**, 995 A.2d 1280, 1282 (Pa. Super. 2010).

He maintains a second substantial question arises from what he considers to be a manifestly excessive revocation sentence imposed by relying inordinately on the gravity of the underlying offense at the expense of mitigating sentencing factors such as character and rehabilitative needs, which a court must consider pursuant to Section 9721(b). Brief of Appellant, at 18. "[A]n excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." **Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*). Therefore, we will address Appellant's discretionary aspects of sentencing claim on its merits.

This Court has stated:

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal.

> An abuse of discretion is more than an error in judgment — a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.
>
> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.
>
> Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. [U]pon revocation [of probation] ... the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence.

**Commonwealth v. Colon**, 102 A.3d 1033, 1044 (Pa. Super. 2014) (quotations and citations omitted).

When imposing a probation revocation sentence, the trial court must follow the general principle that the sentence be "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."  42 Pa.C.S. § 9721(b).[1]  Additionally, where probation has been revoked, a sentence of total confinement may only be imposed if:

---

[1] As this Court has observed,

> [Ordinarily, the] proper standard of review for an appellate court is to focus on the pertinent statutory provisions in the Sentencing Code, specifically 42 Pa.C.S. § 9781(c) and (d), and 42 Pa.C.S. § 9721(b).   We also consider a sentence imposed following revocation of probation in light of the limitations set forth in 42 Pa.C.S. § 9771(c).[] Because subsections 9781(c) and (d) include

*(Footnote Continued Next Page)*

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c).

In all cases where the trial court resentences an offender following revocation of probation, the trial court must place its reasons for the sentence on the record. 42 Pa.C.S. § 9721(b); **Commonwealth v. Cartrette**, 83 A.3d 1030, 1040–1041 (Pa. Super. 2013). "A trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Crump**, 995 A.2d at 1282–1283. Moreover, when a court orders a PSI, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Conte**, 198 A.3d 1169, 1177 (Pa. Super. 2018) (citation omitted).

_____

a focus on sentencing guidelines, however, and because sentencing guidelines do not apply to sentences imposed following a revocation of probation, in this case we look solely to the provisions of 42 Pa.C.S. § 9721(b). **Commonwealth v. Coolbaugh**, 770 A.2d 788, 792 (Pa. Super. 2001).

**Commonwealth v. Williams**, 69 A.3d 735, 741 (Pa. Super. 2013).

This Court has held that, "[t]echnical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate [a resistance] to reform." *Commonwealth v. Carver*, 923 A.2d 495, 498 (Pa. Super. 2007). Nevertheless, we have overturned on grounds of unreasonableness lengthy incarceration sentences imposed solely upon technical violations of probation. *See Williams*, *supra* (rejecting revocation sentence of roughly 24-48 years for multiple probation violations, concluding it was "severe on its face" and the product of bias); *Commonwealth v. Parlante*, 823 A.2d 927, 931 (Pa. Super. 2003) (4 to 8-year revocation sentence of incarceration manifestly unreasonable for technical violations by young, non-violent offender with short criminal history of forgery, misdemeanor drug possession, and underage drinking).

"However, given this Court's highly deferential standard of review, such relief should be afforded only in rare cases." *Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007); *Commonwealth v. Burgos-Semidey*, 256 A.3d 10, at *3 (non-precedential decision) (Pa. Super. filed May 6, 2021) (distinguishing disproportionate punishments in *Williams* and *Parlante* from appropriate revocation sentence of incarceration imposed on probationer Burgos-Semidey for multiple PWID, retail theft, and conspiracy convictions

where sentence for technical violations made him parole-eligible in ten months with good behavior).[2]

Appellant argues the trial court abused its discretion when it imposed an excessive revocation sentence of two-and-one-half years' to five years' incarceration, followed by 5 years' probation, "as Mr. Lorenzo only had technical violations and was unlikely to commit a new crime, and incarceration was not necessary to vindicate the trial court's authority." Brief of Appellant, at 14. "Aside from the instant case and a 2015 summary offense[,]" Appellant's argument continues, "he has no criminal record . . . and his behavior at issue involved only "using the Internet and a smart phone and . . . drinking, [] behavior [that] did not result in criminal activity." *Id*. Instead, he maintains, "[w]hile he may have been irresponsible or immature, [he] was not a danger to the public." *Id*. Accordingly, Appellant concludes, his technical violations did not fall under any of the three Section 9771(c) requirements for total confinement after the revocation of probation. We disagree.

At Appellant's probation violation hearing of August 21, 2023, the trial court acknowledged that because of his "lengthy violation history, Probation had been recommending a state sentence. . . . an appropriate period of state-length sentence." N.T. 8/21/23, at 4, 5. Defense counsel, meanwhile,

_____

[2] Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. *See* Pa.R.A.P. 126(b)(1)-(2).

requested a county sanction with release to go to outpatient treatment or inpatient.  Counsel admitted:

> **Defense Counsel:** "I understand he has these smart phones and he obviously needs sex offender treatment, because it is one thing him going back and forth talking to people, but there's, I think, the bigger issue, and I believe [Probation] Officer Thase will agree, that is looking at porn, adult porn, not child, but on a regular basis.  So, in our conversations Mr. Lorenzo has admitted that he does need treatment and accepts that he has a problem with basically looking at porn a lot.  So, I would just ask – and he was – he did not go to the last part of the sex offender treatment.  I think that's just because he knew he already violated and just stopped.
>
> So, I would ask – I understand you've given him multiple chances.  And I think that Skyline would take him back.  If your Honor would like to give him some kind of sanction, he also has indicated in four days he will have, I think, 120 days in the jail. . . .

N.T. at 5-6.

The trial court, having the benefit of both the Commonwealth's and defense counsel's respective positions, along with the PSI report and recommendations therein, offered the following observations on Appellant's lengthy and unsuccessful probationary period in which he repeatedly failed to comply with both general terms and outpatient requirements.

> **Trial Court:** [I]n a review of the history here, it appears that from early in his supervision

he was dishonest. He left probation when he was asked for a [toxicology] screen indicating his granddad had been hospitalized for a heart attack, which was untrue. That was back in November of 2019. And then over a period of time thereafter continued to demonstrate willingness to be dishonest and avoid supervision up to and including his most recent claim that he had been clean, not used any drugs or alcohol, for a year knowing full well that he had.

We've tried him on EM [(Electronic Monitoring)]. He's had a prior JRS plan. His history of using cell phones and social media applications when he is not permitted to do so does include actively seeking child pornography on earlier occasions, citing from a report in 2019 – I'm sorry – August of 2022, referring back to the earlier violations.

**Probation Officer:** That's correct, Your Honor. I can speak to my time supervising Mr. Lorenzo from April of 2022 onward. It seemed to – the violations seem to parallel themselves. It has been very similar violations to the point where with the initial violation from August of 2022 it was so concerning there was a search warrant obtained and executed on that cell phone believing it was child porn. The female was identified as 17-years-old. No further legal avenues were pursued by the county police, however.

Despite that, Mr. Lorenzo seems to still follow some of the same violations. Even in this most recent violation, just from the system information from the cell phone, he obtained the phone a day after leaving the inpatient facility, coupled with the fact he obtained a phone while he had an

active warrant. It is extremely concerning that he is jeopardizing his freedom to utilize a smart phone to access porn, contact individuals on Snapchat.

**Trial Court:** And also, in the earlier report from 2022 he was not in treatment, but he did lie about that. He had JRS. It seems like we continue to do the same thing over and over again and expect a different result.

At this point there's some sort of compulsion that he has to continue to obtain cell phones. One is confiscated, he goes and gets another one even before we've had his violation hearing.

**Defense Counsel:** Your Honor, I don't know how – I've discussed this with him. I know it really wouldn't address if he had a cell phone or not. He can do electronic home monitoring at Skyline. So, he would be able to be monitored 100 percent going to treatment and any kind of other outpatient treatment or mental health. And I think he would be more scrutinized there also than if he was on house arrest.

**Trial Court:** We've tried house arrest once before already, and the notes indicate that he was with family members and that was not an appropriate placement.

**Defense Counsel:** This would be at Skyline. I wouldn't ask for him to be with family. I would ask him to be under the supervision of the recovery home at Skyline.

**Trial Court** Right. But, again, he has to be discharged from there somewhere.

**Defense Counsel:** No. He can stay there for – that would be like the Skyline – he would be going to outpatient treatment with JRS and sex

offender treatment but be able to live at Skyline. There's not a set time. Obviously, he can't live there indefinitely, but there's not any kind of set time that he would be discharged unless it was because of his own doing, obviously.

**Trial Court:** Where was he residing when he started his cycle of violation this time?

**Probation Officer:** He was discharged from inpatient treatment to Skyline Recovery House.

**Trial Court:** So, this occurred while he as at Skyline?

**Probation Officer:** That's correct, Your Honor.

N.T. at 5-11.

Defense counsel pleaded with the trial court to appreciate that Appellant's addiction to pornography was confined to legal adult pornography, but the trial court found this addiction nonetheless troubling given Appellant's recent history of seducing underage teenage girls and his current inability to complete mandatory sex offender treatment despite attending several different programs. N.T. at 11. Turning to Appellant, the trial court said, "Mr. Lorenzo, I really can't do it over and over again. I think I told you that last time. I am not here to babysit. I am here to provide you with opportunities, and you've had several beginning in January of 2019." N.T. at 12. The trial court noted that more than four-and-one-half years had passed since that time and he had proven either unwilling or incapable of addressing the very problems of pornography addiction, alcoholism, and dishonesty that were

identified as causative factors in the commission of his underlying crimes and in his continuing inability to comply with probation. N.T. at 14-15.

Defense counsel asked the court to impose a county sentence with eligibility for the "Hope" program, but the trial court noted that the Hope program was not designed to assist a sex offender. Defense counsel agreed with the court's observation and further conceded that the county jail offered no program to address sex offender issues. N.T. at 16-17. Nevertheless, defense counsel suggested that if the trial court "could fashion something where he can successfully complete the Hope Program, then maybe he can be back on track so when he is released, he can go into sex offender treatment and be successful." N.T. at 17.

The trial court rejected the idea as futile, given the many rounds of failed county attempts to treat Appellant's problems with multiple addictions. Instead, the trial court identified a state sentence of incarceration—to which over one years' credit for detainer time served would apply—as a necessary alternative to address both Appellant's rehabilitative needs and the court's reasonable concern that Appellant was likely to commit another crime if not imprisoned.

**Trial Court:** He has been to Renewal. He's been on EM. He's been to Skyline through JRS. And, if anything, his compulsion toward cell phone and Internet access to pornography has gotten worse. And the alcohol [problem] he's minimizing, but it is clearly still a significant issue for him. The problem we have with sex offenders is we really don't have anywhere to put them that gives us

an alternative to where they've already been, and so that puts us right back where I started. We are talking about trying to do the same thing again. He's already been to a couple SOC programs. He doesn't tell the truth. That's another significant fact that makes it really hard for me to have confidence that he's going to truly engage.

He was initially involved with Mon-Yough for mental health. So, it was Dr. Coufal (phonetic) that said that he had enrolled in treatment, but he actually had not. And then he did enroll in FAACT, but he wasn't attending treatment there either.

So, unfortunately, the County, while it does have the Hope program and can provide treatment, he has already been to Renewal while at the jail. He just isn't going to get anything more than he had before. And going back to Skyline, there's no plan for after that. He can stay there perhaps indefinitely, but that's where he was when he had not one but two successive cell phones. I don't think the level of supervision there is, perhaps, sufficient for somebody with his apparent compulsion.

. . .

I just think he needs to have a start-up right after that's going to mandate treatment where he's going to have to be forced to face his lack of truthfulness, which is a significant barrier to any progress in treatment if he is just not truthful with himself or anyone else. That has to do not just with the use of alcohol, not just whether he is in treatment or not, not just the cell phone acquisition and use to search pornographic sites.

He has never served a period of incarceration. He does have some credit time from past detainers here and from now. But I think he

- 14 -

would benefit from a state program where they can at least get him started. I think that he's not likely to be successful if we do the same thing again.

. . .

[After acknowledging that Appellant had 406 days of detainer time credit that would apply to the revocation sentence it was about to impose, the trial court announced the following sentence:] So, I am going to revoke his probation. On the single count of child pornography, Felony 3, I am going to impose a sentence there. He has got enough credit to exceed the -- he exceeds a year already. He will have about 6 months – 5 to 6 months in classification.

I would like him to have at least one full year in treatment. So, I am going to revoke the Felony 3, impose a sentence of 2 ½ to 5 years with a consecutive 2-year probation at that count. [After announcing a concurrently run 5-year probationary sentence, the court indicated,] And I'm going to impose the state special conditions for sex offenders as well as the optional conditions.

N.T. at 17-18, 19, 20-21.

This record supports the trial court's exercise of sentencing discretion in imposing the revocation sentence at issue. Although the probation violations at issue were technical and not in and of themselves criminal, they nevertheless consisted of alarming behavior—serial scofflaw possessions of smartphones, downloading of pornographic videos, and admissions of using alcohol—from a young sex offender with substance abuse issues who had

incorporated smartphone depictions of child pornography into his underlying criminal interactions with minors.

Indeed, such violations, which Appellant grossly downplays in his brief, reasonably prompted the trial court to conclude Appellant posed an immediate risk of committing another sex offense if not incarcerated. Furthermore, confronted with Appellant's chronic noncompliance with county programs offering substance abuse and sex offender treatment options, the trial court prudently concluded that a state sentence was the logical next step, as it would allow Appellant access to new programs for his addiction problems.

As the trial court explains in its Rule 1925(a) opinion:

The information in the Pre-Sentence Report supported this Court's [(the trial court's)] conclusion that incarceration of Appellant was necessary:

> He has had several opportunities to regain compliance. His supervision was revoked in November of 2022 for ongoing technical violations. A month after that in December he obtained a new smart phone and engaged in similar behaviors. I have two packets of cell phone evidence that we'll incorporate into the record. He then failed to report and while he was in absconder status obtained another smart phone. He told us at the last hearing that, despite the evidence on the phone, he had been clean a year but with further review now admits to the recorded video on his smart phone [containing adult pornography] and admission to using alcohol to friends through text messages and Snapchat.

([PSI Report excerpt])

Over the course of his community supervision, Appellant has been in violation repeatedly and been given numerous opportunities to come into compliance. Appellant has had multiple opportunities

to complete sex offender treatment, yet he has been unable to do so. ([Commonwealth Exhibit #11]). Appellant had been placed on electronic monitoring, has been sent to Renewal and to Skyline through Justice Related Services for drug and alcohol treatment. ([Com. Ex. 17]). Appellant has not only failed to improvement his behavior, but he as also gotten worse in terms of his compulsion toward obtaining cell phones and acceding [*sic*][3] internet pornography.

This Court [the trial court] determined that Appellant has exhausted community resources and is not amenable to community supervision. Appellant, through his continued non-compliance, has demonstrated that he is a danger to those closest to him and to the community at large, and that his need for rehabilitation is beyond that which can be provided in the community.

Trial Court Opinion, at 5-6.

We agree with the trial court's assessment in this case. For the foregoing reasons, we conclude that the 2½ to 5-year sentence of incarceration, to which the detainer time credit applied, was not disproportional to Appellant's continuing, intransigent noncompliance with probationary terms. Instead, the sentence reflected the trial court's thoughtful consideration of both Appellant's rehabilitative needs and the many chances he was given to conform to his original probationary sentence. Therefore, we reject Appellant's comparison of his sentence to those invalidated in prior cases discussed above.

Thus, discerning no merit to Appellant's discretionary aspects of sentencing claim, we affirm.

---

[3] We understand the trial court to acknowledge the record of Appellant's "accessing" internet pornography with his smartphone.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/30/2024